**FRIENDS OF PHIL GRAMM, Plaintiff,**

v.

**AMERICANS FOR PHIL GRAMM IN '84, Congressional Majority Committee, Galliano, Ralph, Defendant.**

Civ. A. No. 84–386–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 18, 1984.

Michael A. Sterlacci, Annandale, Va., James F. Schoener, Washington, D.C., for plaintiff.

MacKenzie Canter, III, Washington, D.C., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This suit arises out of an unusual dispute between Friends of Phil Gramm (FOPG), the official campaign committee of Congressman Phil Gramm (R., Tex.), and the Congressional Majority Committee (CMC), an independent political action committee (PAC). As part of an effort to maintain a Republican majority in the United States Senate, CMC has organized a group called "Americans for Phil Gramm in '84 (AFPG). This group, described by defendants as an "independent project" of CMC, seeks to promote the election of Gramm to the Senate seat now held by Senator John Tower (R., Tex.). By sending out mailings soliciting financial support for Gramm's candidacy, AFPG to date has raised approximately $50,000. In large measure these funds have been used to underwrite successive rounds of fundraising mailings.

Candidates generally welcome the support of PACs. The candidate's authorized committee and any PACs supporting his candidacy, while not directly collaborating together, most often perceive themselves as allied in a common cause. Here, however, Phil Gramm and his authorized committee bitterly oppose and, in fact, seek to halt AFPG's efforts. Congressman Gramm testified that he believes that AFPG can help him best by not helping him at all. FOPG accordingly has filed a complaint with the Federal Election Commission (FEC), a complaint with the Post Office, and this lawsuit, all aimed at halting AFPG's fundraising activities.

In this diversity suit, plaintiff makes two basic types of state law claims. First, FOPG alleges that defendants, by using Gramm's name without his authorization, have caused voters to mistake AFPG for Gramm's authorized committee and have violated a Virginia statutory prohibition against unauthorized use of a person's name for advertising or commercial purposes. FOPG maintains that as a result it has been deprived of funds that it otherwise would have received from contributors. Second, FOPG contends that defendants have misrepresented both AFPG's relationship with Gramm and his official campaign committee and the purposes for which AFPG has raised and spent its funds. It asks for a preliminary injunction prohibiting defendants from using Phil Gramm's name in AFPG's literature and from disposing of any contributions received by AFPG. Defendants, in turn, have moved to dismiss plaintiff's state law claims on the ground that they are preempted by federal law.

Requests for preliminary injunctions are governed by the so-called balance-of-hardships test. As discussed in *North Carolina State Ports v. Dart Containerline Co.*, 592 F.2d 749, 750 (4th Cir.1979), this test requires the court to evaluate four factors:

(1) plaintiff's likelihood of success on the merits;

(2) whether plaintiff will suffer irreparable injury if the injunction is denied;

(3) the injury to defendants if an injunction is granted; and

(4) the public interest.

In weighing these four factors, the court must bear in mind

the correlation between the likelihood of plaintiff's success and the probability of injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction.

*Id.* Plaintiff is not entitled to an injunction under these standards.

The Court determines that plaintiff's allegations concerning defendants' use of Gramm's name fail as a matter of law and GRANTS defendants' motion to dismiss with respect to these allegations. In light of the facts plaintiff has thus far adduced, its likelihood of success on the merits of its fraud claims is remote. Its probability of irreparable injury is not sufficiently strong to justify injunctive relief. In addition, an injunction issued in the absence of some showing of fraud would impermissibly interfere with defendants' First Amendment rights.

## I. USE OF PHIL GRAMM'S NAME

In addition to using Phil Gramm's name in its title, AFPG freely uses Gramm's name in its literature. Plaintiff argues that these uses of Gramm's name are improper because, first, they violate Va.Code Ann. § 8.01-40 and, second, they have misled contributors into believing that AFPG is Gramm's authorized campaign committee.

### A. *Use of Gramm's name in AFPG's title*

FOPG argues that AFPG may not legitimately use Phil Gramm's name as part of its title. The Federal Election Campaign Act of 1971, 2 U.S.C. § 431 *et seq.,* appears to speak directly to this issue, providing that:

> In the case of any political committee which is not an authorized committee, such political committee shall not include the name of any candidate in its name.

2 U.S.C. § 432(e)(4). In its complaint now pending before the FEC, FOPG charges defendants with violating § 432(e)(4). That section, if applicable here, preempts a

---

**1.** A person who believes that the Act has been violated must first file a complaint with FEC. In cases where the FEC determines that the complaint is supported by probable cause, the FEC must attempt to correct or prevent the alleged violation "by informal methods of conference, conciliation, and persuasion ...." 2 U.S.C. § 437g(a)(4). If conciliation fails, the FEC may institute a civil action for relief. 2 U.S.C. § 437g(a)(6).

cause of action based on any similar prohibition arising from state law.

It is well settled that "state law is nullified to the extent it actually conflicts with federal law." *Fidelity Federal Savings & Loan Association v. De La Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). State law may conflict with federal substantive requirements or, as here, federally prescribed procedures. Under the Federal Election Act, the FEC has exclusive initial jurisdiction over alleged violations of the Act. 2 U.S.C. § 437d(e). A complainant's recourse to the courts is essentially limited to an action for review of the FEC's action or inaction. 2 U.S.C. § 437g(a)(8).[1] This administrative enforcement scheme compels the conclusion that where requirements imposed by state law and by the Act overlap, the Act preempts a cause of action based on state law. Otherwise, a complainant could circumvent the Act's carefully crafted procedural scheme simply by filing an action in court based on state law. Congress did not intend for the jurisdiction of the FEC to be so easily defeated. The concern for preserving the integrity of the Act's enforcement procedures undoubtedly played a prominent role in Congress' decision to write a preemption provision into the Act. That provision provides:

> The provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office.

2 U.S.C. § 453. In light of this express preemption language and the Act's administrative enforcement mechanism, the Court holds that the Act preempts a state law claim within the scope of § 432(e)(4)'s prohibition.

---

The complainant may bring an action against the FEC in federal court where the FEC has dismissed the complaint or failed to act on it within 120 days. 2 U.S.C. § 437g(a)(8)(A). Where the court finds that the FEC acted "in a manner contrary to law", it may direct the FEC to conform to the law within 30 days. If the FEC fails to comply with the court's directive, the complainant may bring a civil action to remedy the violation. 2 U.S.C. § 437g(a)(8)(C).

Plaintiff argues that its claim for relief with respect to the name of AFPG is not preempted because § 432(e)(4) is arguably inapplicable. The FEC has held that while an unauthorized "political committee" must refrain from using a candidate's name in its title, and "independent project" of such a committee is not subject to § 432(e)(4)'s prohibition. *In the Matter of the Congressional Club,* M.U.R. 1316 (1980).[2] Plaintiff maintains that because defendants in the matter currently before the FEC take the position that § 432(e)(4) does not apply to AFPG because it is an independent project of a political committee, they may not assert that section as a basis for preemption. Plaintiff's argument is a two-edged sword. Based on plaintiff's contention before the FEC that § 432(e)(4) *does* apply, one can argue with equal force that plaintiff must concede preemption.

Plaintiffs emphasis on the parties' contentions in the FEC proceedings obscures the real issues at stake. The more important issues are (1) whether § 432(e)(4) prohibits AFPG from using Gramm's name as part of its title and, if not, (2) whether the Act, by negative implication, precludes states from imposing such a prohibition.

In light of the doctrine of primary jurisdiction, the Court has no authority to decide the first issue of whether § 432(e)(4)'s prohibition applies on these facts. Because the second issue arises only if § 432(e)(4) is held inapplicable, the Court may not reach it.

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between courts and administrative agencies charged with particular regulatory duties." *United States v. Western Pacific R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). It is designed to allocate power between courts and agencies to make initial determinations. 4 K. Davis, Administrative Law Treatise § 22.1 (2d ed. 1983). Although primary jurisdiction originated as a judge-made doctrine, here the governing statute itself reposes primary jurisdiction with the FEC. As mentioned above, the FEC initially has exclusive jurisdiction over alleged violations of the Act. Judicial authority to adjudicate alleged violations of the Act does not come into play until after the FEC has had an opportunity to act. 2 U.S.C. § 437g(a)(8). The Court does not, as plaintiff implicitly suggests, have authority to act where § 432(e)(4) is arguably inapplicable. Congress intended the FEC, not the courts, to decide first whether the Act has been violated. It is precisely because § 432(e)(4) arguably applies that the FEC must in the first instance resolve the issue of its applicability.

■ In summary, plaintiff's contention that state law forbids AFPG from using Gramm's name in its title is either preempted by the Federal Election Act or raises issues that are within the primary jurisdiction of the FEC. The claim is accordingly DISMISSED.

### B. *Other uses of Gramm's name*

Va.Code Ann. § 8.01–40 prohibits an organization from using a person's name or picture for advertising or commercial purposes without first obtaining the person's written consent. The section gives the aggrieved person a right to sue a violating organization for injunctive relief and damages.[3] Plaintiff maintains that defendants

---

**2.** The Act defines "political committee" as, *inter alia,* "any committee ... which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calender year ...." 2 U.S.C. § 431(4)(A). In the *Congressional Club* case, a political committee entitled the "Congressional Club" had organized a group labeled "Americans for Reagan". According to the opinion of the FEC's General Counsel, "Americans for Reagan" was not itself a political committee because it did not raise or spend funds. All fundraising and spending was done in the name of the "Congressional Club".

The validity of the FEC's interpretation of § 431(4)(A) and § 432(e)(4) is currently being litigated in the United States District Court for the District of Columbia. *Common Cause v. FEC,* No. 83–2199.

**3.** § 8.01–40. *Unauthorized use of name or picture of any person; exemplary damages; statute of limitations.*—A. Any person whose name, portrait, or picture is used without having first

have violated § 8.01–40 by using Gramm's name and picture in AFPG's mailings without his consent. Defendants, citing dicta in *Evans v. Sturgill*, 430 F.Supp. 1209, 1212 (W.D.Va.1977), read the statute to proscribe only commercial uses of a person's name or picture. AFPG, they insist, does not use Gramm's name or picture for commercial purposes.

▰▰▰ The parties make the questionable assumption that Virginia law applies on these facts. Under Virginia's conflict of laws principles, the place of the injury supplies the governing law in tort actions. *See McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662 (1979) (reaffirming lex loci delecti principle); *C.I.T. Corp. v. Guy*, 170 Va. 16, 195 S.E. 659 (1938). In this case, the place of the injury would seem to be either the District of Columbia, where plaintiff is located, or Texas, where plaintiff would have spent the contributions that it allegedly would have obtained but for defendants' wrongful conduct. The Court, however, need not decide which law applies. The Court is satisfied that § 8.01–40 or its common law counterparts in other states, *see* Prosser, Law of Torts § 117, at 804–07 (4th ed. 1971), may not be construed to prohibit political organizations from using a candidate's name or picture in a political campaign without his consent. Such an expansive interpretation of the law of tortious appropriation of name would trench on important freedoms secured by the First Amendment.

The right of individuals and organizations publicly to support or oppose a candidate for public office is indispensible to democratic decisionmaking. As the Supreme Court held in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), advocacy "of the election or defeat of candidates for federal office is no less entitled to protection under the First Amendment than the discussion of public policy generally or the passage or defeat of legislation." This fundamental First Amendment right to advocate the defeat of election of a candidate necessarily carries with it a right to use a candidate's name. If courts were to allow a political candidate to obtain civil damages from, or injunctive relief against, those who use his name without authorization, the right to advocate the defeat or election of particular candidates would lack efficacy. By permitting a candidate to regulate the use of his name in a political campaign, such remedies would stifle the "uninhibited, robust, and wide-open" debate on public issues that the First Amendment was designed to promote. *See New York Times v. Sullivan*, 376 U.S. 254, 255, 84 S.Ct. 710, 713, 11 L.Ed.2d 686 (1964).

▰▰▰ Defendants were within their First Amendment rights in using Gramm's name without his consent in their solicitations. The right to use a candidate's name in supporting or opposing his candidacy for public office extends to organizations such as AFPG as well as to individuals. *See First National Bank v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (holding that corporations have a First Amendment right to speak out on public issues). Further, the First Amendment protects the right to use a candidate's name, without his consent, in soliciting contributions. In *Buckley v. Valeo, supra,* the Supreme Court declared that "virtually every means of communicating ideas in today's mass society requires the expenditure [of money]." *See Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley*, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981). An organization cannot effectively exercise its right to advocate the election or defeat of a candi-

---

obtained the written consent of such person ... for advertising purposes or for the purposes of trade, such person may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sus-

tained by reason of such use. And if the defendant shall have knowingly used such person's name, portrait, or picture in such manner as is forbidden or declared to be unlawful by this chapter, the jury, in its discretion, may award exemplary damages.

date unless it is also able to raise money for its cause. Just as an organization must be free to use a candidate's name in communicating its position to the public generally, so must it also be able to use his name in raising the funds that make such communication possible.[4]

AFPG's right to use Gramm's name in publicly supporting his candidacy is not absolute. It may not use Gramm's name in connection with statements it knows to be false. The First Amendment affords no protection whatever to such statements. *New York Times, supra; Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Plaintiff, however, does not contend that the compliments paid to Gramm in AFPG's literature[5] are defamatory or false, much less that defendants knew the compliments to be false. Rather, plaintiff insists that defendants use of Gramm's name is improper because they did not first secure his consent.

■ While it is true that governmental interests, if sufficiently potent, may override First Amendment rights, the competing governmental interests at stake here will not support the cause of action plaintiff seeks to maintain. Advocacy of particular candidates for public office is essential to effective self-government. Restrictions on such advocacy bear a correspondingly heavy burden of justification. *See Rosenblatt v. Baer*, 383 U.S. 75 at 86, 86 S.Ct. 669, 15 L.Ed.2d 597. Possible justifications for the consent requirement on which plaintiff relies include the interests in protecting the candidate's reputation, his privacy, or the commercial value of his name. The concern for reputation is inapplicable here because the statements about Phil Gramm contained in AFPG's literature is not alleged to be false.[6] Even if defamation or false light were allegedly involved, plaintiff could not recover unless defendants acted with "actual malice." *New York Times, supra; Time, Inc. v. Hill*, 385 U.S. 374, 87

4. The right to solicit contributions for advocacy protected by the First Amendment may be overborne by other legitimate state interests. The Federal Election Act, for instance, prohibits a corporation without capital stock from soliciting contributions from persons who are not "members" of the corporation. 2 U.S.C. §§ 441b(a), 441b(b)(2)(C), 441b(b)(4)(A), 441b(b)(4)(C). In *FEC v. National Right to Work Committee*, 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982), the Supreme Court upheld the constitutionality of this provision. The Court reasoned that while the solicitation limitation implicated First Amendment right of association this right was overcome by the governmental interest in preventing actual and apparent political corruption.

The Court addressed a different but somewhat analoguous issue in *California Medical Association v. FEC*, 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981). The Court, without a majority opinion, upheld the constitutionality of a limitation on the dollar amount of contributions to multi-candidate political committees. The plurality declared that such contributions constituted "speech by proxy" rather than direct political advocacy and was not entitled to full First Amendment protection. 453 U.S. at 196, 101 S.Ct. at 2721 (opinion of Marshall, Brennan, White, Stevens, JJ.). Justice Blackmun disagreed with the conclusion that political contributions are not entitled to full First Amendment protection but found the dollar limitation justified by the governmental interest in avoiding

actual or potential corruption. 453 U.S. at 202–03, 101 S.Ct. at 2724–25 (Blackmun, J., concurring in the judgment). The four remaining Justices refused to address the constitutional issue because, in their view, the Court lacked jurisdiction. 453 U.S. at 204, 101 S.Ct. at 2725 (Stewart, Powell, Rehnquist, JJ., & Burger, C.J., dissenting).

The plurality's reasoning would seem to imply that, like contributions to a political committee, solicitations for contributions by a political committee are not entitled to full First Amendment protection. In the Court's unanimous *National Right to Work Committee* decision, however, there was no suggestion that solicitations are subject to a lesser degree of First Amendment protection because they do not concern "direct advocacy."

5. The literature, for instance, praises Gramm for his courage and dedication for "standing up for his conservative principles instead of going along with the Liberal National Democrat Leadership in Washington" and for being the "hero of the Reagan Revolution".

6. The inquiry is not whether in this particular case the First Amendment rights at stake are outweighed by other competing interests. A case-by-case balancing approach "would lead to unpredictable results and uncertain expectations . . . ." *Gertz*, 418 U.S. at 343, 94 S.Ct. at 3009. The issue is what rule appropriately accomodates all of the various rights and interests in this *type* of case.

S.Ct. 534, 17 L.Ed.2d 456 (1967).[7] As to privacy, this interest carries considerably less weight in the case of a candidate for public office who has voluntarily exposed himself to the public view:

> An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case.

*Gertz,* 418 U.S. at 344, 94 S.Ct. at 3009. It is an open question whether the First Amendment will ever permit a private person to maintain a cause of action against someone who invades his privacy by publishing truthful information about him. *See Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 491, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328 (1975) (declining to decide issue). But even assuming such a cause of action exists, it does not extend to a candidate for public office who seeks to control the use of his name in a political campaign. Finally, the interest in protecting the commercial value of a person's name does not apply in this type of case. The speech involved here is not commercial speech. Defendants are not exploiting Gramm's name in order to market a product more effectively. Rather, they are using his name in advocating his candidacy for public office and in soliciting funds for this purpose. Any economic interest a candidate such as Gramm might have in his name is not directly implicated by, and cannot justify restrictions on, this type of preeminently political speech.

■ The tort of appropriation of name has been interpreted in a manner consistent with First Amendment constraints. *See, e.g., Ann-Margret v. High Society Maga-zine, Inc.,* 498 F.Supp. 401 (S.D.N.Y.1980). The Court accordingly holds that this body of law does not oblige individuals or organizations to obtain a candidate's consent before they may use the candidate's name in advocating his defeat or election or in soliciting funds for such advocacy. Plaintiff's suit is therefore DISMISSED insofar as it relates to the alleged appropriation of Congressman Gramm's name.

## II. FRAUD

■ The right to use a candidate's name described above is not unqualified. The First Amendment does not protect knowingly false statements. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *New York Times, supra.* Nor does the Federal Election Act categorically preclude a state law cause of action for fraud. The Act nowhere specifically addresses the problem of fraud in political advertising. Congress obviously did not intend completely to preclude state regulation in this area, thus giving political organizations license to mislead. The only reasonable conclusion is that Congress intended to leave regulation of fraud in political advertising to the states, except where such regulation conflicts with the Act's specific provisions.

Plaintiff does not allege that defendants have misrepresented Gramm's political beliefs or his general qualifications for office. Nevertheless, its complaint and evidence raise, by implication, two types of alleged fraud. First, plaintiff alleges that defendants, by failing to indicate forthrightly AFPG's status as an independent organization, have misled contributors to mistake AFPG for Gramm's official committee. Second, plaintiff alleges that defendants

---

7. In *Time* a private individual who had been involuntarily involved in a newsworthy event had obtained a $30,000 judgment against the publisher of *Life* magazine under a New York statute that gives a right of action to one whose name or picture was the subject of an article containing material and substantial falsification. The Court reversed, applying the *New York Times* actual malice standard because a matter of public interest was involved. Some commentators have questioned whether *Time* has survived the Court's more recent decision in *Gertz. See* G. Gunther, Constitutional Law 1341–43 (10th ed. 1980). Under *Gertz,* the applicability of the *New York Times* actual malice standard hinges on the status of the plaintiff, not, as in *Time,* the subject matter involved.

The *New York Times* standard applies here under both the *Time* and the *Gertz* approaches because the case involves both a matter of public interest and a public official.

have fraudulently failed to fulfill their promise to contributors that all money raised would be spent solely on behalf of Phil Gramm. Plaintiff alleges that as a result of each type of fraud it has lost contributions that it would otherwise have had at its disposal.[8]

Because plaintiff failed to demonstrate a substantial likelihood of prevailing on the merits of either allegation, the Court DENIES its motion for a preliminary injunction.

■■■ The Federal Election Act arguably provides the exclusive remedy for plaintiff's allegation that AFPG's literature does not adequately indicate that it is not in any way affiliated with Gramm's authorized campaign committee. The Act provides that solicitations made by an unauthorized political committee "shall clearly state" that the solicitations are not authorized by the candidate or candidate's committee. 2 U.S.C. § 441d(a)(3). This provision, together with the Act's preemption provision, may well preempt plaintiff's fraud cause of action insofar as it alleges that AFPG's solicitations do not adequately specify AFPG's independent status. *See* discussion at I, A. *supra.*

Yet even assuming *arguendo* that plaintiff's cause of action is not so preempted, the facts adduced at the evidentiary hearing fail to demonstrate that defendants had an intent to deceive, an essential element of fraud. *See* 37 Am.Jur.2d, *Fraud and De-*

*ceit* § 185. All of AFPG's mailings state in several places that AFPG is an independent project of CMC. AFPG's more recent mailings contain the required disclaimer that the mailing is not authorized or paid for by any candidate or candidate's committee. Ideally these statements should be more prominently displayed and more fully explained. The evidence showed that some contributors, because they either did not notice or understand AFPG's representations, mistook AFPG for Gramm's official campaign committee. Nevertheless, the evidence did not show that defendants deliberately or recklessly misled contributors.[9]

The evidence likewise failed to demonstrate that defendants intended to deceive contributors as to the purposes of AFPG's fundraising efforts. AFPG's literature states in no uncertain terms that: "The sole purpose of [AFPG] is to do everything possible to insure the election of Phil Gramm to the United States Senate."[10] Plaintiff maintains that defendants have not fulfilled this promise. According to plaintiff:

Defendants have made no contributions or expenditures on behalf of Phil Gramm although they have contributed small amounts to campaigns of three other candidates. The only expenditures listed in their Federal Election Commission report show expenditures to raise the funds they have collected and to pay legal and consulting fees—none of which

---

**8.** The Court assumes, without deciding, that the applicable state law gives plaintiff a cause of action to redress injury it has suffered as a result of fraud perpetrated on third parties.

**9.** The Court does not dismiss this plaintiff's allegation that defendants have intentionally misled contributors as to the status of AFPG. The Court's April 25 order is MODIFIED to that extent. If it desires, plaintiff may introduce further evidence on this point. Before such evidence is adduced, however, plaintiff must address whether § 441d(a)(3) preempts this allegation.

**10.** AFPG's literature also states:
we will design and print a series of campaign brochures and flyers for distribution in key areas of the state. We will also make extensive use of targeted voter mailings, both to

convince "undecided" voters to support Phil Gramm, and to turn out known Gramm supporters on Election Day.
   As the campaign gears up, we will also produce a series of radio and television commercials advocating Phil Gramm's election. ... As funds permit, we will air these commercials on TV and radio stations throughout Texas.
Ralph Galliano, Chairman of CMC, testified without contradiction that AFPG has not yet spent funds for above-mentioned purposes because Gramm was expected to win the May 5 primary easily. AFPG, Galliano stated, will spend funds on brochures, voter mailings, and media advertising as the November election draws nearer.

can be said to benefit Congressman Gramm.

Plaintiff's Amended Memorandum of Points and Authorities, at 1–2. The Court disagrees with plaintiff's characterization of AFPG's expenditures.

The evidence so far adduced does not bear out plaintiff's allegation that defendants did not and do not intend to spend AFPG's funds on Gramm's behalf. While reports filed with the FEC show that CMC made contributions to other candidates totaling less than $1,000, there was no showing that these contributions were made with funds raised by AFPG. Ralph Galliano, chairman of CMC, testified that AFPG has raised and spent approximately $50,000 to date. Apart from routine operating expenses, the greatest bulk of these expenditures have gone towards producing, printing and mailing solicitations for contributions. AFPG's efforts have been largely circular. It has sent out solicitations to generate money in order to send out more solicitations to generate more money, etc. So far AFPG has not advertised Gramm's candidacy in the media. It evidently has not begun to establish an organizational network in Texas. Nor has it printed leaflets for general distribution.

Despite these arguable failings, the evidence thus far presented does not permit the inference that AFPG has not spent and never intended to spend funds on Gramm's behalf. AFPG's solicitations redound to Gramm's benefit, if only because they attract attention to his candidacy and cast his candidacy in a positive light. Although AFPG's efforts to date have been largely circular, there was no showing that such circularity is atypical in the initial stages of a political campaign or that AFPG's only intention is to raise funds so that it can raise even more funds. There was no suggestion that AFPG is actually trying to enrich its officers or their personal friends. Nor was there any evidence that AFPG's avowed desire to help Gramm's candidacy succeed is insincere.

Plaintiff seems to consider Gramm's disapproval of AFPG's efforts as evidence that AFPG is not truly acting on Gramm's behalf. Gramm, however, has no legal right to control the expenditures of either his supporters or detractors. The issue, then, is not whether AFPG meets with Gramm's personal approval but rather whether defendants in good faith believe that they are acting in Gramm's best interests. Plaintiff has adduced virtually no evidence warranting an inference that defendants have acted in bad faith.

The Court accordingly DENIES plaintiff's motion for a preliminary injunction with respect to its allegations of fraud. Plaintiff's likelihood of success is too insubstantial to justify injunctive relief. Without a strong showing of fraud, the Court cannot be confident that an injunction will not unduly interfere with defendants First Amendment right to speak out on behalf of Gramm's candidacy.