**STATE of Minnesota, Appellant,**

v.

**Thaddeus Victor JUDE, Respondent.**

No. C5–96–509.

Court of Appeals of Minnesota.

Oct. 15, 1996.

Hubert H. Humphrey, III, Attorney General, Lee E. Sheehy, Chief Deputy Attorney General, Peter M. Ackerberg, Robert A. Sta-nich, Assistant Attorneys General, St. Paul, for Appellant.

Charles R. Shreffler, Jack E. Pierce, Shreffler Law Firm, P.A., Minneapolis, Roger J. Magnuson, Dorsey & Whitney L.L.P., Minneapolis, Harlan M. Goulett, Minneapolis, for Respondent.

Mark R. Anfinson, Minneapolis, for Amicus Curiae Minnesota Civil Liberties Union.

Considered and decided by HARTEN, P.J., and SCHUMACHER and FOLEY*, JJ.

## OPINION

SCHUMACHER, Judge.

This appeal is from a pretrial order dismissing an indictment charging respondent Thaddeus Victor Jude with the gross misdemeanor offense of disseminating false political campaign material in violation of Minn. Stat. § 211B.06 (1994). We affirm.

## FACTS

Jude ran for the Sixth District Congressional seat in 1994 against William Luther. After the Jude campaign had issued several attacks on Luther's record on crime while he was a state senator, the campaign broadcast a TV ad on the last weekend of the campaign in which it accused Luther, while in the Minnesota Senate, of blocking a Jude-sponsored bill that, Jude claimed, would have prevented a December 1990 crime spree by a convicted sex offender, Daniel Patten.

The TV ad stated as follows:

In 1990, a Minnesota woman and her two daughters were abducted and repeatedly raped over a two-day ordeal. Despite two prior convictions, the perpetrator, Daniel Patten, was out of prison on a weekend furlough. **Patten may never have been released and this crime never committed had legislation authored by Tad Jude been enacted. But Jude's bill was stopped by Bill Luther and his liberal friends in the Minnesota Senate.** Bill Luther's willingness to set violent crimi-

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

nals free is putting every woman in Minnesota in danger. Sending him to Congress would be a crime.

(Emphasis added.)

Jude had introduced a bill in the 1987 legislative session that would have delayed certain violent offenders' eligibility for supervised release. It would have become effective August 1, 1987, and applied to offenses committed on or after that date.

Patten had been sentenced in 1983 to a 95–month prison term for criminal sexual conduct. After a revocation of supervised release, he was only two weeks short of the expiration of his sentence in December 1990 when he committed the crimes referred to in the ad while released on a weekend furlough.

The state presented to the grand jury charges of dissemination of false campaign material against Jude and against his campaign manager, Steven Knuth. The grand jury heard testimony about the history of Jude's bill in the 1987 legislative session. Jude testified, conceding that his bill would not have applied to Patten's case. He testified, however, that he had been assured by Knuth that the bill would have applied to Patten. Jude testified that he was under the impression that Patten had been convicted of another offense in 1988, and therefore would have been covered by the bill.

The grand jury returned an indictment charging Jude with dissemination of false campaign material. *See* Minn.Stat. § 211B.06, subd. 1. Jude moved to dismiss the indictment, however, and the trial court granted the motion, concluding that the statute was unconstitutionally overbroad and was preempted by federal law. The state filed this appeal.

## ISSUES

1. Is the Minnesota Fair Campaign Practices Act preempted by federal law?

2. Is Minn.Stat. § 211B.06, subd. 1 unconstitutionally overbroad?

3. Did the trial court clearly err in dismissing the grand jury indictment?

## ANALYSIS

### 1. Federal Preemption

The trial court concluded that the Minnesota Fair Campaign Practices Act, Minn.Stat. §§ 211B.01–.21 (1994), under which Jude was charged, is preempted by the Federal Election Campaign Act (FECA), and regulates federal elections in violation of the Elections Clause, and the Supremacy Clause. U.S. Const. art. I, § 4, cl. 1, art. VI, cl. 2.

FECA regulates campaign contributions to candidates for federal office and expenditures made by those candidates. *See* 2 U.S.C. §§ 431–455 (1994). The Act provides:

> The provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office.

2 U.S.C. § 453 (1994).

There is a strong presumption against preemption. *Weber v. Heaney,* 995 F.2d 872, 875 (8th Cir.1993). The explicit preemption in FECA has been narrowly construed in determining what area of state law has been preempted. *Id.; see also Reeder v. Kansas City Bd. of Police Comm'rs,* 733 F.2d 543, 545 (8th Cir.1984) (FECA preemption statute is not so clear as to preclude consideration of legislative history as to scope of preemption).

The statute under which Jude was charged does not regulate the expenditures of, or campaign contributions to, candidates for federal office, or any other office. *See* Minn. Stat. § 211B.06. It merely prohibits certain nonfinancial campaign practices by all candidates in Minnesota, specifically the use of *false campaign materials or advertising.* A separate provision in the Fair Campaign Practices Act does prohibit corporate political contributions. Minn.Stat. § 211B.15. But most of this state's campaign financing provisions are found in chapter 211A.

The United States Supreme Court has recognized the state interest in establishing

> a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.

*Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). FECA provides only a very limited regulatory scheme for federal elections. As the Eighth Circuit indicated in *Weber,* the FECA preemption provision should not be read so broadly as to preempt state laws in areas such as false registration or voting fraud. 995 F.2d at 876; *see also Friends of Phil Gramm v. Americans for Phil Gramm,* 587 F.Supp. 769, 776 (E.D.Va.1984) (Congress in enacting FECA did not intend to prevent states from regulating fraud in political advertising).

◼ Jude argues that the regulation of false campaign advertising does not relate to the "time, place and manner" of a federal election, as permitted by the Elections Clause, and is therefore an unconstitutional assertion of state power, in violation of the Supremacy Clause. *See* U.S. Const. art. I, § 4, cl. 1 (states shall prescribe "Times, Places and Manner" of holding congressional elections). We disagree. The United States Supreme Court has recently indicated its approval of state laws that regulate election procedures without imposing substantive qualifications on candidates for federal office. *U.S. Term Limits, Inc. v. Thornton,* — U.S. —, — — —, 115 S.Ct. 1842, 1869–70, 131 L.Ed.2d 881 (1995). A state may adopt, consistent with the Elections Clause, " 'generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself.' " *Id.* at —, 115 S.Ct. at 1870 (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 788 n. 9, 103 S.Ct. 1564, 1570 n. 9, 75 L.Ed.2d 547 (1983)).

Minn.Stat. § 211B.06 is generally applicable to all candidates for election in Minnesota. It prohibits false campaign advertisements, and other false statements in the course of a campaign, and is, therefore, directly related to the fairness and honesty of the electoral process. The statute is not an unconstitutional state regulation of a federal election.

### 2. Overbreadth

◼ A statute is unconstitutionally overbroad if it extends to constitutionally-protected speech and other expressive conduct, and if the overbreadth is both real and substantial. *New York v. Ferber,* 458 U.S. 747, 770, 102 S.Ct. 3348, 3361–62, 73 L.Ed.2d 1113 (1982). The statute will be invalidated if by its terms it leaves no room for a narrowing construction. *Board of Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 575, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987). Whenever possible, however, this court should narrowly construe a statute to save it from constitutional challenge. *In re Welfare of R.A.V.,* 464 N.W.2d 507, 509 (Minn.1991), *rev'd on other grounds,* 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

◼ Minn.Stat. § 211B.06, subd. 1 makes it a crime to

intentionally participate[ ] in the preparation, dissemination, or broadcast of paid political advertising or campaign material with respect to the personal or political character or acts of a candidate, whether or not defamatory, * * * that the person *knows or has reason to believe* is false and that is designed or tends to elect, injure, or defeat a candidate * * * *.

(Emphasis added.) The trial court concluded that the extension of criminal liability to those who have only a "reason to believe" the campaign material is false makes the statute unconstitutionally overbroad. We agree.

◼ A statement made concerning a public official is not defamatory, unless it is made with

"actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964). A criminal sanction may not be imposed for political speech that does not meet the *N.Y. Times* "actual malice" standard. *Garrison v. Louisiana,* 379 U.S. 64, 76–78, 85 S.Ct. 209, 216–17, 13 L.Ed.2d 125 (1964). The state, however, argues that any overbreadth created by the "reason to believe" language is not real and substantial.

◼ Jude argues that the "reason to believe" language in section 211B.06 creates an ordinary negligence standard. But our supreme court has construed "reason to believe" as used in the mandatory child abuse

reporting law, to require a gross negligence standard. *State v. Grover*, 437 N.W.2d 60, 63 (Minn.1989). Thus, Minn.Stat. § 211B.06 would be interpreted, even in the absence of constitutional challenge, as requiring gross negligence. Even gross negligence, however, is defined objectively, as a gross deviation from the standard of ordinary care, while "reckless disregard" involves a subjective element of actual conscious disregard of the risk created by the conduct. *See State v. Frost*, 342 N.W.2d 317, 319–20 (Minn.1983). This difference is "real and substantial" when the challenged statute regulates "core political speech" as does Minn.Stat. § 211B.06. *See McIntyre v. Ohio Elections Comm'n*, —— U.S. ——, ——, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426 (1995) (law burdening "core political speech" must be examined with exacting scrutiny).

■■■ The state argues that the "reason to believe" language in section 211B.06 should be narrowly construed, to avoid a finding of unconstitutionality, as covering only statements made with "reckless disregard" of their truth or falsity, as required by *N.Y. Times*. The *N.Y. Times* "actual malice" standard is plainly the pattern to which the statute must be trimmed. Moreover, Jude does not show that Minn.Stat. § 211B.06 is so sweeping that it cannot effectively be narrowed by limiting the phrase "reason to believe" to situations in which there is a reckless disregard of the truth or falsity of the statement. But, because of the way in which the offense was presented to the grand jury, it is not possible to apply a narrowing construction in this case.

### 3. Dismissal of Indictment

Jude argues that this court cannot employ a saving construction of Minn.Stat. § 211B.06 because the grand jury itself was given the unconstitutionally overbroad "reason to believe" language. The trial court concluded that the grand jury had been improperly instructed, and that this error could not be said to be harmless. We agree, and find that the trial court's conclusion is not clearly erroneous. *See generally State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977) (state in pre-

trial appeal must show clearly and unequivocally that trial court erred).

The prosecutor deleted the "reason to believe" language in instructing the grand jury on the elements of the offense, apparently trying to narrow the statute's overbreadth. But the prosecutor displayed by overhead projector the full statute, including the "reason to believe" language, both before and after the evidence was presented. Moreover, the forms for the overhead projection of the statute were left in the room where the grand jury deliberated. Thus in this case, although there was some attempt to do so, no clear limiting construction was provided to the grand jury. *Cf. State v. Hipp*, 298 Minn. 81, 90–91, 213 N.W.2d 610, 616–17 (1973) (affirming unlawful assembly convictions where trial court applied limiting construction in instructing jury).

The supreme court has reversed a disorderly conduct conviction that it determined could not stand under a saving construction the court adopted to save the statute from an overbreadth challenge. *In re Welfare of S.L.J.*, 263 N.W.2d 412, 419–20 (Minn.1978). The court noted that the Constitution required "fighting words" before a person could be convicted for mere speech and reversed because the state had failed to prove that the words uttered were "fighting words." *Id.* at 420.

We do not hold that a properly-instructed grand jury could not find probable cause to believe that Jude's conduct met the *N.Y. Times* "actual malice" standard. We cannot find on this record, however, that the grand jury applied the constitutionally-required "actual malice" standard, or some narrower construction of Minn.Stat. § 211B.06, subd. 1. Accordingly, the trial court did not clearly err in dismissing the indictment.

### DECISION

Minn.Stat. § 211B.06 is not preempted by federal law. The statute, however, is unconstitutionally overbroad. The trial court did not clearly err in dismissing the indictment because the record fails to show that the

grand jury applied a constitutionally permissible standard.

**Affirmed.**