**FAIR CAMPAIGN PRACTICES ACT: DISCLAIMER: VIOLATIONS:** The prohibition against anonymous campaign material in Minn. Stat. §§ 211B.04(a) and (b) (1996) is clearly unconstitutional under controlling U.S. Supreme Court precedent.

82t
(Cr. Ref. 627f-2)

August 27, 1997

Donald H. Spartz
Le Sueur County Attorney
65 South Park Avenue
PO Box 156
Le Center, MN 56057-1056

Dear Mr. Spartz:

In your letter to Attorney General Hubert H. Humphrey III, you present substantially the following:

## FACTS

The Montgomery-Lonsdale School District held a school board election on May 20, 1997. A leaflet apparently promoting the candidacy of a write-in candidate for school board was disseminated to school district residents several days prior to the election. The leaflet did not identify the person or committee who prepared and paid for the leaflet.

In relevant part, Minn. Stat. §§ 211B.04(a) and (b) (1996) makes it a misdemeanor for "[a] person who participates in the preparation or dissemination of campaign material" to omit from such material:

the name and address of the person or committee causing the material to be prepared or disseminated in a disclaimer substantially in the form provided in paragraph (b) . . ..

(b) . . . the required form of disclaimer is: "Prepared and paid for by the _____ committee, _____ (address)," for material prepared and paid for by a principal campaign committee, or "Prepared and paid for the by the _____ committee, _____ in support of _____ (insert name of candidate or ballot question)" for material prepared and paid for by a person or committee other than a principal campaign committee.

"'Campaign material'" means any literature, publication, or material tending to influence voting at a primary or other election, except for news items or editorial comments by the news media." Minn. Stat. § 211B.01, subd. 2 (1996).

You ask substantially the following:

## QUESTION

Are the provisions of Minn. Stat. § 211B.04 (1996) (a) and (b) prohibiting the preparation or dissemination of anonymous written campaign material unconstitutional?

## OPINION

We answer this question in the affirmative. However, a more limited regulation of anonymous campaign material may be constitutional.

We do not ordinarily undertake to determine the constitutionality of state statutes since this office may deem it appropriate to intervene and defend challenges to the constitutionality of statutes. Op. Atty. Gen. 629-a, May 9, 1975. However, in the exceptional circumstance where the United States Supreme Court has unambiguously decided the constitutionality of a statute that cannot be fairly distinguished from the statute at issue and an opinion on the constitutionality of the statute would serve the public interest, we do not feel precluded from addressing such an inquiry. Cf. Op. Atty. Gen. 627-h, Aug. 28, 1989 (addressing constitutionality of statute banning campaigning on election day). Such is the case here.

The constitutionality of Minn. Stat. § 211B.04(a) and (b) is governed by McIntyre v. Ohio Elections Commission, 514 U.S. 334, __, 115 S. Ct. 1511 (1994). In McIntyre, the Supreme Court held unconstitutional an Ohio statute similar to sections 211B.04(a) and (b). Id. at 1524. The challenged Ohio statute required a disclaimer for

> a notice, placard, dodger, advertisement, sample ballot, or any other form of
> general publication which is designed to promote the election or defeat of a
> candidate, or to promote the adoption or defeat of any issue, or to influence the
> voters in any election . . ..

Id. at 1514 n.3. Mrs. McIntyre composed and printed on her home computer an anonymous leaflet urging voters to reject a proposed school levy. Id. at 1514. She distributed copies to persons attending a public meeting at the school about the upcoming referendum. Id. Aside

from her son and a friend, who helped place some of the leaflets on car windshields in the school

parking lot, Ms. McIntyre acted independently. Id. A $100 fine was imposed on her by the Ohio

Elections Commission for distributing the unsigned leaflets. Id.

In addressing the constitutionality of the Ohio disclaimer provision, the Supreme Court

characterized it as a regulation of "core political speech" that is protected by the First

Amendment. Id. at 1518. Such a law will be upheld "only if it is narrowly tailored to serve an

overriding state interest." Id. at 1519. Ohio had argued that the law is justified by the State's

interest in (1) providing voters with relevant information and (2) preventing fraudulent and

libelous statements. Id. However, the Court concluded that "[t]he simple interest in providing

voters with additional relevant information does not justify a state requirement that a writer make

statements or disclosures she would otherwise omit." Id. at 1520. The Court noted that the

State's interest in preventing fraud and libel "carries special weight during election campaigns

when false statements, if credited, may have serious adverse consequences for the public at

large." Id. However, the Ohio statute swept too broadly because

> It applies not only to the activities of candidates and their organized supporters,
> but also to individuals acting independently and using only their own modest
> resources. It applies not only to elections of public officers, but also to ballot
> issues that present neither a substantial risk of libel nor any potential appearance
> of corrupt advantage. It applies not only to leaflets distributed on the eve of an
> election, when the opportunity for reply is limited, but also to those distributed
> months in advance. It applies no matter what the character or strength of the
> author's interest in anonymity.

Id. at 1521-22 (footnote omitted). The Court concluded that "Ohio has not shown that its interest

in preventing the misuse of anonymous election-related speech justifies a prohibition of all uses

of that speech." Id. at 1524.

We see no legal basis for fairly distinguishing Ohio's disclaimer statute from Minnesota's

disclaimer statute. Like the Ohio statute, the Minnesota disclaimer requirement is not narrowly

tailored to accomplish its purposes because it bans all anonymous campaign literature.

Furthermore, we see no factual or legal basis for justifying Minnesota's disclaimer requirement

on grounds other than those advanced by Ohio. Following McIntyre, a number of other disclaimer statutes similar to the Ohio and Minnesota statutes were invalidated by courts. See, e.g., Steward v. Taylor, 953 F. Supp. 1047 (S.D. Ind. 1997); West Virginians For Life, Inc. v. Smith, 960 F. Supp. 1036 (S.D.W. Va. 1996); Virginia Society for Human Life, Inc. v. Caldwell, 906 F. Supp. 1071 (W.D.Va. 1995); State v. Moses, 655 So.2d 779 (La. Ct. App. 1995). In addition, a number of reported state Attorney General opinions have reached the same conclusion about disclaimer statutes in other states. See, e.g., Del. Op. Atty. Gen. 95-FB01, Sept. 29, 1995 (1995 WL 794524); Mich. Op. Atty. Gen. 6895, Apr. 8, 1996 (1996 WL 167418); Neb. Op. Atty. Gen. 95039, May 15, 1995 (1995 WL 297245), and Tenn. Op. Atty. Gen. 95-090, Aug. 29, 1995 (1995 WL 520721).

We have carefully reviewed three other reported state Attorney General opinions which concluded that the McIntyre decision invalidated only some applications of the disclaimer statute in that state rather than the entire statute. 239 Ala. Op. Atty. Gen. 37, May 15, 1995 (1995 WL 914515) (McIntyre holding limited to individuals who distribute anonymous materials in a non-candidate election); Md. Op. Atty. Gen. 95-015, May 16, 1995 (1995 WL 313052) (McIntyre applies only to anonymous literature prepared by individuals acting independently), and Va. Atty. Gen. Op. Letter to M. Bruce Meadows, July 13, 1995 (McIntyre does not apply to disclaimer requirement in candidate elections). However, no reported court decision has adopted this narrow interpretation of McIntyre. Furthermore, the reasoning of the Virginia Attorney General was rejected by a federal district court that preliminarily enjoined enforcement of the Virginia disclaimer statute as overbroad. See Caldwell, 906 F. Supp. 1074 n.9 and 1076.

Under the overbreadth doctrine,

> an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court--those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law partially invalidated.

Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S. Ct. 2794, 2801 (1985). If the challenged statute is substantially overbroad, "the law may not be enforced against anyone, including the party before the court, until it is narrowed to reach only unprotected activity, whether by legislative action or by judicial construction or partial invalidation." Id. at 503-04, 105 S. Ct. at 2801-02 (citation omitted).

The broad language of the Minnesota disclaimer statute is not susceptible of a narrowing construction because it plainly applies to all campaign literature regardless of who prepared it, how it was prepared or the type of election for which it was prepared. Although an overbroad statute can sometimes be saved from being struck if the invalid parts are severable, the disclaimer statute is written in a manner that makes it impossible to distinguish between permissible and impermissible applications. For these reasons, it is our opinion that sections 211B.04(a) and (b) are clearly unconstitutional.[1]

However, it should be noted that the First Amendment does not forbid all regulations of campaign literature. The majority opinion and the concurring opinion by Justice Ginsburg in McIntyre suggests that a more narrowly tailored disclaimer provision would be consistent with the First Amendment. The majority opinion recognized that a State's interest in enforcing campaign prohibitions against false statements "might justify a more limited identification requirement ..." McIntyre, 115 S. Ct. at 1522. Justice Ginsburg, in her concurring opinion, observed that the Court's decision does not "hold that the State may not in other, larger circumstances, require the speaker to disclose its interest by disclosing its identity." Id. at 1524 (Ginsburg, J., concurring). Furthermore, the Minnesota Court of Appeals has acknowledged that the State may properly forbid campaign material prepared with reckless disregard of its

---

[1] Although a county attorney who is notified of an alleged violation of Chapter 211B is required to institute a prosecution if there is probable cause to do so, Minn. Stat. § 211B.16, subd. 1 (1996), we have noted that the legislature could not have intended to require a county attorney to initiate a futile prosecution under an unconstitutional statute. Op. Atty. Gen. 627-h, Aug. 28, 1989.

truth or falsity.  <u>State v. Jude</u>, 554 N.W.2d 750, 754 (Minn. Ct. App. 1996).  Thus, the First

Amendment permits narrowly tailored regulation of anonymous campaign literature.[2]

Very truly yours,

HUBERT H. HUMPHREY III
Attorney General

PETER M. ACKERBERG
Assistant Attorney General

AG:32438 v1

---

[2] A proposal to narrow section 211B.04 was introduced in the 1997 Minnesota Legislature after a bill that included it was vetoed in 1996.  <u>See</u>, S.F. 708, § 35 (1997) and 1996 Minn. Laws, ch. 441 § 45 (1996) (vetoed).  The proposal would have permitted anonymous campaign literature by an individual acting independently who spends less than $300 from her own individual resources for campaign material more than 14 days before the election.