### TOWN OF BURRILLVILLE

v.

### RHODE ISLAND STATE LABOR RELATIONS BOARD.

No. 2004–53–M.P.

Supreme Court of Rhode Island.

May 4, 2007.

Jeffrey W. Kasle, for Plaintiff.

Margaret L. Hogan, Wakefield, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This matter is before this Court pursuant to our issuance of a writ of certiorari. The Town of Burrillville (Town) seeks review of a Superior Court decision denying the Town's appeal of a decision by the State Labor Relations Board (SLRB), which held that the Town had committed an unfair labor practice in violation of the Rhode Island Labor Relations Act (Act), G.L. 1956 chapter 7 of title 28. The dispute centers around a particular order issued by the Town's chief of police that became effective on or about March 10, 1999 and that is referred to as "General Order No. 1." [1]

Before this Court, the Town argues (1) that the election-of-remedies doctrine should have precluded Local 369 of the International Brotherhood of Police Officers (Union) from filing an unfair labor practice charge with the SLRB in reference to this dispute; (2) that the Town had no obligation to bargain over the implementation of General Order No. 1; and (3) that the Union waived its right to bargain over the implementation of General Order No. 1.

For the reasons set forth in this opinion, we quash the decision of the Superior Court.

---

1. For the sake of full accuracy, we note that the order in question is entitled, "General Order # 1, Series of 1999." However, in this opinion, it will be referred to simply as "General Order No. 1."

## Facts and Travel

The facts of this case are largely undisputed. Pursuant to the Act's definitional section (§ 28–7–3), the Town is an "employer." The Union is a "labor organization" within the meaning of the Act, and it is the bargaining representative for the Town of Burrillville Police Department. The Town and the Union entered into a collective bargaining agreement, which was in effect at all times pertinent to the events described herein. Pursuant to Articles 1.9 and 2.1 of the collective bargaining agreement, the Town of Burrillville was vested with the authority to issue rules, regulations, and general orders.

In early March of 1999, Colonel Bernard Gannon, the chief of police, drafted General Order No. 1, which set forth the administrative procedure pursuant to which police officers who were injured in the line of duty were to report their injuries in order to receive injured-on-duty (IOD) benefits.[2] General Order No. 1 requires police officers to submit the following forms (collectively referred to as an IOD package) in order to be placed on IOD status: (1) a form reporting the injury; (2) the statements of any witnesses; (3) a form authorizing any medical providers to release to the Police Department medical information relating to the injury; (4) a form to be completed by the injured officer's immediate supervisor; and (5) a statement from all medical providers indicating (a) whether the injury in question was job-related, (b) the officer's medical diagnosis, (c) whether the officer would be able to perform his or her regular duties, (d) the officer's prognosis, (e) the rehabilitation of the officer, and (f) the date when the officer would be able to return to his or her regular duties (which statement must be updated if the officer does not return to his or her regular duties by the time initially specified).

Under General Order No. 1, a new IOD package is required every time that an officer, after returning to work, sustains a recurrence of a previous IOD injury or needs additional medical treatment as a result of the previous IOD injury. General Order No. 1 also requires an officer to present medical documentation clearing the officer to return to work before he or she can return to "duty" status.

Additionally, section 10 of General Order No. 1 provides that an officer will be suspended for two days without pay if he or she twice fails to appear to be examined by the Town's physician if the Town determines that such an appointment is needed. Section 11 requires that officers on IOD status "notify the Office of the Chief of Police of his/her intention to leave * * * Rhode Island" for more than twenty-four hours; in such cases, that officer's IOD status will be changed and the officer will be required to use vacation time for that purpose.

Prior to the implementation of General Order No. 1, Colonel Gannon held a face-to-face meeting with Officer Macomber (the president of the Union at that time) and Sergeant McBrier (the vice president of the Union at that time). During that meeting, Colonel Gannon gave a copy of General Order No. 1 to both Officer Macomber and Sergeant McBrier for their review, and the three of them discussed its substance.

At the hearing before the SLRB, Sergeant McBrier testified that, upon reviewing General Order No. 1 during that meeting, he and Officer Macomber "spoke for quite some time" with Colonel Gannon. He further testified that he and Officer

---

**2.** In Rhode Island, the provisions of G.L. 1956 chapter 19 of title 45 govern the compensation of police officers who have become injured on duty.

Macomber voiced their concerns to the Colonel about the perceived problems that they had with respect to certain of the procedures set forth in General Order No. 1. At the conclusion of the meeting with Colonel Gannon, it was Sergeant McBrier's belief that, "as [they] had done in the past," the three participants would arrange another meeting, at which their respective lawyers would also be present in order to further discuss General Order No. 1.

Notably, however, Sergeant McBrier admitted before the SLRB that neither he nor any other officer of the Union had ever submitted to the Police Department a written request that the Union and Town bargain over General Order No. 1. Sergeant McBrier also stated that he never specifically said to Colonel Gannon, "We want to bargain over the implementation of this general order" at any time after its implementation. Colonel Gannon testified before the SLRB that the Union never notified him, either verbally or in writing, that it believed that General Order No. 1 involved mandatory subjects for bargaining.

Additionally, Sergeant McBrier testified that at no time prior to the implementation of General Order No. 1 did the Town express any willingness to rescind General Order No. 1 and bargain with the Union over it. Sergeant McBrier also conceded that the Union had not bargained with the Police Department on any of the prior similar general orders that Colonel Gannon had issued in his capacity as chief of police; Colonel Gannon's own testimony is completely consistent with that statement.

On March 10, 1999, approximately one week after his meeting with Officer Macomber and Sergeant McBrier,[3] Colonel Gannon implemented General Order No. 1 in accordance with the procedure required by the collective bargaining agreement between the Town and the Union.

Several months later, on July 22, 1999, the Union filed a grievance under the collective bargaining agreement regarding the implementation of General Order No. 1. The Union alleged that requiring Sergeant McBrier to use his vacation leave when he traveled out of state on a preapproved vacation while he was on IOD status violated the collective bargaining agreement. On February 11, 2000, the matter was heard before an arbitrator (again in accordance with the terms of the collective bargaining agreement), who ultimately rendered a decision on April 25, 2000, in which he ruled that paragraph 17 of General Order No. 1 did not violate the collective bargaining agreement.

On August 24, 1999, while the abovementioned grievance was still pending, the Union filed a charge with the SLRB, arguing that the Town had violated § 28–7–12 and §§ 28–7–13(6) and (10) of the Act by implementing General Order No. 1 without first bargaining with the Union. After an unsuccessful informal conference between the Town and the Union, the SLRB issued a complaint against the Town on August 25, 2000 alleging violations of §§ 28–7–13(6) and (10). Seventeen months after the Union filed the charge with the SLRB, on or about January 23, 2001, this matter was formally heard before the SLRB. On April 29, 2002, the SLRB ruled that the Town had violated § 28–7–13(6) by failing to bargain with the Union before implementing General Order No. 1. The SLRB found (a) that the issues of the receipt of IOD benefits and discipline were mandatory subjects for bargaining and (b) that the

---

**3.** At oral argument before this Court, the parties agreed that the implementation of General Order No. 1 occurred about a week after Colonel Gannon's meeting with Officer Macomber and Sergeant McBrier. The record is consistent with the parties' agreement in that regard.

Union had not waived its right to bargain over the issuance of General Order No. 1. Consequently, the SLRB ordered the Town to cease and desist from using the provisions of General Order No. 1 as they pertained to the temporary and permanent discharge of sick time and the possible imposition of discipline without first bargaining with the Union regarding the implementation of General Order No. 1.

The Town sought judicial review of the SLRB's Decision and Order (SLRB's decision) in the Superior Court pursuant to G.L. 1956 § 42–35–15 of the Administrative Procedures Act (APA). On January 30, 2004, the Superior Court issued its decision affirming the SLRB's decision. Then, in accordance with § 42–35–16, the Town filed a Petition for Issuance of a Writ of Certiorari with this Court on February 19, 2004; we granted that petition on September 24, 2004.

### Standard of Review

The Superior Court's review of an administrative decision is governed by § 42–35–15 of the APA. *Rossi v. Employees' Retirement System,* 895 A.2d 106, 109 (R.I. 2006); *Arnold v. Rhode Island Department of Labor and Training Board of Review,* 822 A.2d 164, 166 (R.I.2003).

Section 42–35–15(g) authorizes that court to:

"affirm the decision of the agency or remand the case for further proceedings, or * * * reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) In violation of constitutional or statutory provisions;

"(2) In excess of the statutory authority of the agency;

"(3) Made upon unlawful procedure;

"(4) Affected by other error or law;

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The Superior Court's review of an administrative decision is limited to a determination of whether or not legally competent evidence exists in the record to support the agency's decision. *Johnston Ambulatory Surgical Associates, Ltd. v. Nolan,* 755 A.2d 799, 804–05 (R.I.2000). Legally competent evidence (sometimes referred to as "substantial evidence") has been defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion[; it] means an amount more than a scintilla but less than a preponderance." *Center for Behavioral Health, Rhode Island, Inc. v. Barros,* 710 A.2d 680, 684 (R.I.1998) (internal quotation marks omitted); *see also Arnold,* 822 A.2d at 167; *Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review,* 749 A.2d 1121, 1124 (R.I.2000). The Superior Court must defer to the agency's determinations regarding questions of fact. *State Department of Environmental Management v. State Labor Relations Board,* 799 A.2d 274, 277 (R.I. 2002); *Nolan,* 755 A.2d at 805.

When, as in the instant case, this Court issues a writ of certiorari in order to review a judgment of the Superior Court rendered in proceedings brought under § 42–35–15, "[o]ur consideration * * * is confined to a review * * * of 'any questions of law involved.'" *Barrington School Committee v. State Labor Relations Board,* 608 A.2d 1126, 1138 (R.I.1992) (quoting § 42–35–16). Although our review is limited to questions of law, we freely review such questions. *Rossi,* 895 A.2d at 110; *Arnold,* 822 A.2d at 167;

*Nolan*, 755 A.2d at 805. With respect to questions of fact, this Court will defer to the determinations made by the administrative agency. *Rossi*, 895 A.2d at 110; *Arnold*, 822 A.2d at 167; *Birchwood Realty, Inc. v. Grant*, 627 A.2d 827, 831 (R.I. 1993). We will examine the certified record to ascertain whether or not the Superior Court decision was supported by competent evidence, but we will refrain from weighing the evidence presented. *Nolan*, 755 A.2d at 805; *Berberian v. Department of Employment Security, Board of Review*, 414 A.2d 480, 482 (R.I.1980). We will reverse a decision of the Superior Court in this context only if we find "no reliable, probative, [or] substantial evidence" to support that decision. *State of Rhode Island, Office of Secretary of State v. Rhode Island State Labor Relations Board*, 694 A.2d 24, 28 (R.I.1997). (internal quotation marks omitted).

## Analysis
### I

### Election–of–Remedies Doctrine

■ The Town first argues that the election-of-remedies doctrine barred the Union's unfair labor practice charge before the SLRB.[4] The Town contends that, since the Union opted first to challenge General Order No. 1 by filing a grievance pursuant to the collective bargaining agreement, it was barred from thereafter initiating an unfair labor practice charge with the SLRB because those charges sought to address the same issues. We do not reach this issue because the Town failed to raise it properly below.

It is well settled that this Court will not address an issue if it was not raised below.

*See, e.g., New England Development, LLC v. Berg*, 913 A.2d 363, 369 n. 11 (R.I.2007) ("The election-of-remedies argument was not raised before the trial justice, and therefore it is not properly before us, and we will not address it."); *see also Smiler v. Napolitano*, 911 A.2d 1035, 1041 (R.I. 2006); *see generally Pollard v. Acer Group*, 870 A.2d 429, 432 (R.I.2005). In the instant case, the Town failed to raise the affirmative defense of election of remedies in the Superior Court or before the SLRB. (Indeed, the Town made no mention of such a defense until after *this* Court had issued its writ of certiorari.) By not having articulated its election-of-remedies defense when it previously had an opportunity to do so, the Town has forfeited its right to present that argument at this level.

Furthermore, as we have previously held, we will not consider any issue that is not included in a petitioner's initial petition for issuance of a writ of certiorari. *Cadillac Lounge, LLC v. City of Providence*, 913 A.2d 1039, 1042–43 (R.I.2007); *see also Bergquist v. Cesario*, 844 A.2d 100, 104 (R.I.2004). Since the Town did not make reference to an election-of-remedies argument in its Petition for Issuance of a Writ of Certiorari, it is barred from raising it at this level for this additional reason.

Accordingly, we decline to address the Town's election-of-remedies argument.

### II

### Union's Waiver of Right to Bargain

■ The Town also argues that the Union waived its right to bargain over General Order No. 1 because (1) the Union failed to request bargaining and (2) the Manage-

---

**4.** *See, e.g., State Department of Environmental Management v. State Labor Relations Board*, 799 A.2d 274, 277 (R.I.2002) (noting that "[t]he doctrine of election of remedies is one that is grounded in equity and is designed to mitigate unfairness to both parties by preventing double redress for a single wrong").

ment Rights Clause of the collective bargaining agreement acted as a waiver. We are persuaded that the Town's first contention is meritorious, and it is not necessary for us to reach the second contention.

With respect to labor law issues, this Court has frequently looked to the voluminous body of federal case law for guidance. *E.g., DiGuilio v. Rhode Island Brotherhood of Correctional Officers,* 819 A.2d 1271, 1273 (R.I.2003); *MacQuattie v. Malafronte,* 779 A.2d 633, 636 n. 3 (R.I.2001). In analyzing the instant case, we have once again been substantially assisted by our examination of the reasoning of several decided federal cases.

 The National Labor Relations Board has emphasized that "it is incumbent upon [a] union to act with due diligence" with respect to requesting bargaining once the union has received adequate notice of a proposed modification in the terms or conditions of employment. *Kansas Education Association v. Kansas Staff Organization,* 275 N.L.R.B. 638, 639 (1985); *Clarkwood Corp. v. Local 258 and Local 438, Graphic Arts Intern. Union,* 233 N.L.R.B. 1172, 1172 (1977); *see also Bell Atlantic Corp.,* 336 N.L.R.B. 1076, 1086 (2001); *W–I Forest Products Co.,* 304 N.L.R.B. 957, 960 (1991). We are in full agreement with that principle. A union must do more than merely protest the proposed change or file an unfair labor practice action in order to preserve its right to bargain; a union must affirmatively advise the employer of its desire to engage in bargaining. *See Citizens National Bank of Willmar v. Willmar Bank Employees Ass'n,* 245 N.L.R.B. 389, 390 (1979); *see also Kansas Education Association,* 275 N.L.R.B. at 639. However, the employer's notification to the union concerning the contemplated modification in the terms or conditions of employment "must be given sufficiently in advance of actual implementation of the change to allow a reasonable opportunity to bargain." *Smurfit–Stone Container Corp.,* 344 N.L.R.B. No. 82, 2005 WL 1181103 at *20 (May 16, 2005) (quoting *Ciba–Geigy Pharmaceuticals Division v. Intern. Chemical Workers' Union, Local No. 9,* 264 N.L.R.B. 1013, 1017 (1982)).

 Consequently, a union with sufficient notice of a contemplated change waives its bargaining rights if it fails to request bargaining prior to the implementation of that change. *See W–I Forest Products Co.,* 304 N.L.R.B. at 960. It should be noted, however, that this Court will not find waiver if a proposed change has been made irrevocable prior to the notification of the union or if the change "has otherwise been announced as a matter on which the employer will not bargain." *See id.* at 961; *see also Smurfit–Stone Container Corp.,* 2005 WL 1181103 at *20.

In the case at hand, the Union received more than adequate notice about the contents of proposed General Order No. 1, but it failed to request bargaining after receiving such notice. Colonel Gannon submitted proposed General Order No. 1 to the Union's president and vice president and met with them to discuss its contents. The record indicates that one of the Union officers has conceded that the three men conversed for "quite some time" and that the Union officers voiced their concerns during that meeting about their perceived problems with the proposed changes. However, the Union thereafter failed to request bargaining with the Town regarding General Order No. 1's substance. Sergeant McBrier's subjective belief that, after the first meeting, he and Officer Macomber would be meeting again with Colonel Gannon and with their respective lawyers to further discuss General Order No. 1 is not enough

to satisfy the competent evidence standard. *See Nolan*, 755 A.2d at 805 (stating that, when examining a Superior Court judgment in an administrative proceeding, this Court "examine[s] the record to determine whether [the trial justice's] decision was supported by competent evidence"); *Berberian*, 414 A.2d at 482.

Additionally, it is our judgment that the Union was notified about General Order No. 1 a reasonable amount of time before General Order No. 1 was implemented. Although only approximately one week elapsed between the time when Colonel Gannon informed the Union (through two of its officers) and the time when he actually implemented the change, it is our view that, in this situation, that was sufficient time to allow the Union to request bargaining.

Furthermore, this is not a case in which the contemplated change in policy was made irrevocable before the Union was notified of it, nor is it a case in which the Town indicated to the Union that it would not bargain over the contents of General Order No. 1.[5] It is clear to us that the Town notified the Union about General Order No. 1 and discussed its substance with Union officials before implementing it, and there is no indication in the record that the Town ever indicated that it would

not engage in bargaining. Indeed, Colonel Gannon testified without contradiction that the Town never indicated to the Union that it was unwilling to bargain regarding General Order No. 1.

 Accordingly, we hold that there is insufficient competent evidence in the record to support the SLRB's determination that the Union did not waive its right to bargain with the Town concerning General Order No. 1. Since we have concluded that the Union waived its right to bargain through its inaction, we need not reach the issue of whether it also waived that right pursuant to the Management Rights Clause that is contained in the collective bargaining agreement.[6]

## Conclusion

For the reasons set forth in this opinion, the decision of the Superior Court is quashed. The record may be remanded to the Superior Court with directions to enter a judgment consistent with this opinion.

---

**5.** It is important to point out that the fact that the Town had not indicated to the Union that it was willing to bargain regarding General Order No. 1 is of no consequence here because an employer does not have an affirmative duty to communicate its willingness to bargain.

**6.** In view of our holding on waiver grounds, we need not reach the Town's alternative argument that it had no obligation to bargain prior to the implementation of General Order No. 1. The Town contends (1) that the content of General Order No. 1 is not a mandatory subject of bargaining and (2) that General

Order No. 1 is not substantial enough of a change from past practices to necessitate bargaining.

Although we do not pass upon these contentions, we nonetheless emphasize that, to the extent that the substantive benefits accorded a police officer who injures himself or herself while on duty are governed by § 45–19–1, they cannot be bargained away. *See generally Vose v. Rhode Island Brotherhood of Correctional Officers*, 587 A.2d 913, 915 (R.I.1991); *Power v. City of Providence*, 582 A.2d 895, 900 (R.I.1990).