DECISION
Robert Schultz (Appellant) appeals the State of Rhode Island Board of Registration for Professional Engineers' (Board or Appellee) Decision and Final Order of October 20, 2005 finding in favor of the Board. Mr. Schultz filed the instant complaint on November 14, 2005, contending that the Board's findings substantially prejudiced him and violated his rights because they are not supported by substantial evidence on the record and are therefore erroneous.[1] For the reasons set forth in this Decision, the Court denies Appellant's requested relief, and upholds the Board's Decision and Order. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
Appellant has been a licensed engineer in Rhode Island for over twenty years. Six years ago, two of Mr. Schultz's clients, John and Jennifer Patrie (collectively, "the Patries"), filed a *Page 2 
complaint with the Office of Compliance and Inspection for the Rhode Island Department of Environmental Management (DEM). Subsequently, in February 2003, the Patries filed a complaint with the Board. Both the complaint filed with the DEM and the complaint filed with the Board arose from the same set of circumstances.
When the Board received the Patries' Complaint, the Chair of the Board, Mr. L. Robert Smith, appointed himself to investigate their allegations. Mr. Smith gathered information from both the DEM investigation and proceedings and from interviewing the parties involved. In addition to investigating the Patries' complaint, he also considered six other properties about which the DEM had sent Notices of Violation to Mr. Schultz, regarding possible violations. These properties are Plat 13, Lot 47B of East Killingly Road in Foster; Plat 47, Lot 10-1 on Central Pike in Scituate; Plat 11, Lot 13 on Balcom Road in Foster; Plat 13, Lot 12A on Burgess Road in Foster; and Plat 4, Lots 15 and 16 on Kennedy Road in Foster. In following the Board's standard procedure, Mr. Smith presented his findings to the Board, which then decided to proceed with hearings on the Complaint.
After conducting hearings, the Board found the facts as follows. The Patries retained Mr. Schultz's services as an engineer between March and May 2000, to assist with subdividing a five-acre parcel of land in Scituate, Rhode Island, located at 1495 Chopmist Rd., Plat 47. This property was part of a larger parcel owned by Jennifer Patrie's parents, Ray and Cathy Wall. The Patries planned to subdivide this five-acre lot from the larger property to build a home.
They retained Mr. Schultz to coordinate the project and to design an Individual Sewage Disposal System (ISDS or ISD system) for the five-acre property. Mr. Schultz did not know whether any portion of the proposed lot was wetlands, though he had the Patries sign an ISDS application stating that there were no wetlands on the proposed five-acre subdivision. DEM *Page 3 
approved the application, and Mr. Schultz never conducted tests to check the property for wetlands. Mr. Schultz explained that he relied on Mr. Wall's representation that the property did not have wetlands, though he was aware that Mr. Wall was not trained in determining whether wetlands existed on property.
Additionally, Mr. Schultz coordinated with National Land Surveyors (National), arranging for National to survey the proposed subdivision. On October 17, 2000, Mr. Schultz went before the Scituate Planning Commission on behalf of the Patries and articulated that he did not believe there were any wetlands on the proposed subdivided lot. However, he failed to tell the Scituate Planning Commission that he had not performed any testing or undertaken any other efforts to determine whether there were wetlands on the property. Mr. Schultz also failed to inform the Scituate Planning Commission that his conclusion that the property did not encompass wetlands was based on Mr. Wall's oral representation.
Subsequent to meeting with the Scituate Planning Commission, the Patries performed substantial work on the five-acre lot. Thereafter, in May 2001, the DEM issued a letter to the Patries explaining that it intended to suspend the ISDS permit because there were wetlands on the proposed subdivided lot. As a result, the Patries had to begin the ISDS process again. They learned that due to the wetlands, the ISD system had to be placed on a different portion of the property, more than 500 feet from its original location.
The Patries also learned that the scale used for the ISDS design was inaccurate and the National Survey was incorrect. Due to these discrepancies, there was a dispute regarding whether the ISD system designed by Mr. Schultz was actually within the proposed subdivision's property lines. As a result, the Patries retained another party to resurvey the property and design a new ISD system. *Page 4 
On October 30, 2002, the DEM sent Mr. Schultz a "Notice of Violation and Suspension of License" (Notice), in reference to Mr. Schultz's ISDS license. The Notice listed seven properties of which the ISD systems were in question. These properties are the same properties to which the Board's investigation and decision relate, including the Patries' property. Mr. Schultz and the DEM subsequently entered into a Consent Agreement to resolve the "administrative enforcement action" in the October 30, 2002 Notice. (Consent Agreement 1). Mr. Schultz and the DEM agreed to certain facts and penalties, as outlined therein.
On February 27, 2004, the Board filed a complaint against Mr. Schultz, citing the Patries' complaint against him, the DEM proceedings, and the ISDS problems with seven properties, including the Patries' property. A hearing was scheduled before the Board for April 21, 2004. The Board then filed an amended complaint on October 28, 2004 and notified Mr. Schultz that a hearing before the Board was scheduled for November 9, 2004.
The Board conducted hearings on October 20, 2004; November 9, 2004; November 30, 2004; December 21, 2004; and May 18, 2005. At the first of these hearings, Appellant moved to dismiss the proceedings, asserting that they were barred by the doctrines of collateral estoppel and res judicata. (Tr. 10/20/04 at 6.) Mr. Schultz based these arguments on the prior proceedings with the DEM, which resulted in the consent agreement.Id. The Board denied the motion to dismiss and continued with the proceedings. Id.
After these hearings, the Board issued its Decision and Order on October 20, 2005, in which it concluded that it was not collaterally estopped by the Consent Agreement from pursuing the allegations against Mr. Schultz. (Decision and Order 4.) The Board also determined that Mr. Schultz violated G.L. 1956 § 5-8-18(b)(3) and Rules 1.3, 1.4, 2.6, 2.7, and 3.4 of the Rules of Professional Conduct enacted by the Board. (Decision and Order 4.) Lastly, the Board *Page 5 
determined that Mr. Schultz acted incompetently while practicing engineering and that his actions were grossly negligent, in violation of § 5-8-18(b)(4). Id.
After outlining its factual findings and legal conclusions, the Board prescribed six sanctions and penalties against Mr. Schultz. He received two years of probation, a $1000 fine, and a one-year revocation of his Certificate of Authorization. He was also required to take an ethics course approved by the Board, pay the cost of the Board's hearing transcripts, and publish a public censure notice in The ProvidenceJournal no more than 10 days after the decision.
The instant appeal followed. The parties have agreed to limit the record, stipulating to this effect.[2]
 II Standard of Review
Rhode Island General Laws 1956 § 42-35-15 of the Administrative Procedures Act governs the Superior Court's review of an administrative decision. The Court reviews the decision pursuant to § 42-35-15(g), which provides that
 [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error [of] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or *Page 6 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion
In its review of the decision, the Court "must defer to the agency's determinations regarding questions of fact." Town of Burrillville v.R.I. State Labor Relations Bd., 921 A.2d 113, 118 (R.I. 2007) (citingState Dep't of Environmental Management v. State Labor RelationsBd., 799 A.2d 274, 277 (R.I. 2002)). The Court may not "substitute its judgment on issues of fact" if the agency's determination is supported by substantial evidence on the record. Berberian v. Dep't of EmploymentSec. Bd. of Rev., 414 A.2d 480, 482 (R.I. 1980). Moreover, the Court "must not substitute its judgment for that of the agency in regard to the credibility of witnesses or the weight of the evidence on questions of fact." Baker v. Dep't of Employment and Training Bd. of Rev.,637 A.2d 360 (R.I. 1994) (citing Costa v. Registrar of Motor Vehicles,543 A.2d 1307, 1309 (R.I. 1988)).
Rather, this Court only reviews the agency's factual conclusions to determine "whether or not legally competent evidence exists in the record to support the agency's decision." Town of Burrillville,921 A.2d at 118. Legally competent evidence is also referred to as "substantial evidence," and is defined by the Rhode Island Supreme Court as "`relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Center for Behavioral Health, RhodeIsland, Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998)). To constitute legally competent evidence, there must be "more than a scintilla but less than a preponderance" of evidence on the record supporting the agency's conclusion. Id. Only if the record is "totally devoid of competent evidentiary support" may the Court reverse the agency's factual determinations. Baker, 637 A.2d at 363. Despite the limited scope of this Court's review regarding the Board's factual conclusions, the Court may reverse or remand the Board's decision if the agency incorrectly applied the law to the facts. Narragansett Wire Co. v.Norberg, *Page 7 118 R.I. 596, 607, 376 A.2d 1, 6 (1977). This Court applies a de novo standard of review when assessing the agency's legal conclusions. Arnold v. R.I. DOL Training Bd. of Review, 822 A.2d 164, 167 (R.I. 2003).
 III Analysis
In its Decision and Order, the Board enumerates four conclusions of law. The Board first concludes that it has the jurisdiction to hear and decide the Complaint. (Decisions and Order 4.) Next, the Board states that the consent agreement between Mr. Schultz and the DEM does not constitute collateral estoppel. Id. Third, the Board concludes that the Appellant practiced engineering in Rhode Island, in violation of §5-8-18(b)(3) by violating Rules 1.3, 1.4, 2.6, 2.7, and 3.4 of Rules of Professional Conduct for Engineers. Id. Finally, the Board finds that the Appellant's actions constituted "incompetence in the practice of engineering and gross negligence in violation of § 5-8-18(b)(4)."Id.
Appellant contends that the Board's conclusions of law are incorrect. First, he argues that the Board erroneously concluded that neither collateral estoppel nor res judicata applies to the consent agreement. Furthermore, Appellant contends that the Board's decision that he violated the Rules of Professional Conduct for Engineers, acted incompetently while practicing engineering, and acted with gross negligence, is not supported by substantial evidence on the record.
 A Collateral Estoppel and Res Judicata
The doctrine of collateral estoppel, often referred to as issue preclusion, prevents the same parties from relitigating facts or issues already determined at a prior proceeding. Foster-Glocester RegionalSchool Committee v. Bd. of Rev., Dept. of Labor and Training, *Page 8 854 A.2d 1008, 1014 (R.I. 2004). When properly invoked, collateral estoppel prevents the same parties from relitigating the same facts "in any future lawsuit," regardless of whether the cause of action differs from the prior proceeding. Garganta v. Mobile Village, Inc., 730 A.2d 1, 4
(R.I. 1999). Similarly, res judicata, also known as claim preclusion, "`makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or could have been presented and litigated therein.'"Id. at 5 (quoting ElGabri v. Lekas, 681 A.2d 271, 275 (R.I. 1996));see also Molony Rubien Constr. Co. v. Segrella, 118 R.I. 340, 344,373 A.2d 816, 819 (1977). Both doctrines apply not only to judicial determinations, but also to administrative decisions, where the agency acts in a quasi-judicial capacity. Dep't of Corrections v. Tucker,657 A.2d 546, 549 (1995) (explaining that res judicata "should apply to the decision of a quasi-judicial administrative tribunal" just as it applies to "the judgment of a court").
The elements that the person asserting collateral estoppel or res judicata must prove do not differ greatly. The party seeking to invoke collateral estoppel must show that three requirements are met: (1) that the parties are the same, or are in privity with, the parties to the prior proceeding; (2) that the issues in the current proceeding are identical to those in the prior proceeding; and (3) that the prior proceeding resulted in a final judgment on the merits. Foster —Glocester, 854 A.2d at 1014. Similarly, res judicata "`serves as an `absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.''" ElGabri, 681 A.2d at 275 (quoting Gaudreau v. BlasBalq,618 A.2d 1272, 1275 (R.I. 1993) (quoting In re Sherman, 565 A.2d 870, 872
(R.I. 1989))). *Page 9 
 1 Identity of Parties
Both res judicata and collateral estoppel require that the parties in the current proceeding are identical to parties in the prior proceeding. Identity of parties exists when the parties are the same, or in privity with the parties from the prior proceeding. Duffy v. Milder,896 A.2d 27, 36 (R.I. 2006). Parties are considered to be in privity with one another when "`there is a commonality of interest between the two entities' and when they `sufficiently represent each other's interests.'" Id. (quoting Commercial Union Insurance Co. v.Pelchat, 727 A.2d 676, 680 (R.I. 1999) (quoting Studio Art Theatre ofEvansville, Inc., v. City of Evansville Indiana, 76 F.3d 128, 131 (7th Cir. 1996))). However, a party will not be precluded from litigating the second case if he or she did not have the opportunity to fully and fairly litigate the issue in the prior proceeding. Casco Indemnity Co.v. O'Connor, 755 A.2d 779, 783 (R.I. 2000).
Appellant contends that the Board is precluded from taking action against him because it is the same party, or at least in privity with the DEM. Appellee argues that although both the Board and DEM are state agencies, they serve separate and distinct functions and one cannot be precluded from acting because the other agency acted first.
The Rhode Island Supreme Court has explained that parties may be considered in privity with one another where they share common interests and "sufficiently represent" one another's interests. Duffy,896 A.2d at 36 (internal quotations omitted) (explaining that, where three parties disagree about whether a specific use of property is a lawful nonconforming use, they do not have a commonality of interests, they are not in privity, and res judicata does not apply against two of the parties in a subsequent proceeding where the other, disagreeing party litigated the issue before a different agency first). Moreover, while res judicata and collateral estoppel apply to agency proceedings, *Page 10 
 Court systems have much the same functions and goals; whereas different agencies have different functions, expertise and goals . . . [p]ublic interest is part of every agency's decision but public interest for one agency is not the same as public interest for another . . . great care should be taken before one agency is forced to give collateral effect to the decisions of another. 2 Charles H. Koch, Jr., Administrative Law and Practice § 5.72[3] at 285 (2nd Edition).
In this case, although the DEM and the Board share similar interests with regard to the types of violations charged against Appellant, each entity lacks the authority to "sufficiently represent" the other's interests. While the DEM has the authority to enforce its own rules and regulations, the Board oversees the licensing of engineers, their compliance with the rules and regulations of the Board, including standards of conduct, and the revocation of licenses for failure to comply with the rules and regulations. Each party has distinctly different roles and is not authorized to address the other agency's concerns or interests. Just as the Board is unable to revoke an ISD permit, the DEM is not able to suspend an engineer's license to practice in Rhode Island. Therefore, the Board is not the same as, or in privity with, the DEM.
The United States Supreme Court has noted that "[t]here is privity between officers of the same government, so that a judgment in a suit between a party and a representative of the United States is resjudicata in relitigation of the same issue between that party and another officer of the government." Sunshine Anthracite Coal Co. v.Adkins, Collector of Internal Revenues, 310 U.S. 381, 402-403 (1940). However, the Court further explained that "[t]he crucial point is whether or not in the earlier litigation the representative of the [government] had the authority to represent [the government's] interests in a final adjudication of the issue in controversy." Id. at 403 (holding that the Agency's determination that Plaintiff's coal was of a particular type, which had the effect of subjecting Plaintiff to a tax, acted as res judicata, and Plaintiff could not relitigate this issue with the Internal Revenue Service). This focus on the agency's authority is *Page 11 
analogous to the Rhode Island Supreme Court's emphasis on both commonality of interests and whether the parties sufficiently represent the other's interests. Therefore, despite the fact that both DEM and the Board are entities established by Rhode Island, the mere fact that they are part of the same government does not itself create privity.
Further, collateral estoppel will not apply against a party who did not have the opportunity to fully and fairly litigate the issues in the prior proceeding, even if there is identity of the parties. CascoIndemnity Co. v. O'Connor, 755 A.2d 779, 783 (R.I. 2000). In this case, neither DEM nor Appellant had the opportunity to litigate the issues at the DEM level because there was no hearing on the merits. Instead, they resolved the alleged violations by entering into a consent agreement in lieu of an administrative hearing. Therefore, even if the Board is considered to be in privity with the DEM, collateral estoppel would not preclude the Board's actions because DEM did not have the opportunity to fully and fairly litigate the issues.
 2 Final Judgment on the Merits
Even assuming that there was identity of the parties, collateral estoppel and res judicata would still not apply because the DEM proceeding did not result in a final judgment on the merits after a full and fair opportunity to litigate the issues. In Danzer v. R.I. Bd. ofMed. Licensure and Discipline, 745 A.2d 733 (R.I. 2000), the Rhode Island Supreme Court explained that "an adjudication by a quasi-judicial administrative tribunal will be conclusive as long as the `tribunal grants to the parties substantially the same rights that they would have if the matter were presented to a court.'" Danzer, 745 A.2d at 735
(quoting Dept. of Corrections of the State of R.I. v. Tucker,657 A.2d 546, 549 (R.I. 1995)). In Danzer, the Court found that res judicata did not bar the Medical Board from conducting a second investigation into Dr. Danzer's actions *Page 12 
and ultimately concluding his behavior fell below the standard of care, where the first investigation recommended that he did not behave unprofessionally. The Court held that
 in the board's first investigation, Danzer was neither allowed an opportunity to present argument nor was he afforded an avenue for appeal. In fact, the board never held a hearing, choosing instead to accept the recommendation of its first investigating committee. Thus, it is our conclusion that the board's original finding was not a final adjudication to which res judicata would apply. Id.
The consent agreement that Appellant entered into with the DEM resulted from informal discussions between the parties relating to the Notice of Violation Mr. Schultz received. A Notice of Violation, as defined in agency memorandum, is a formal enforcement action that alerts a party of a suspected violation and provides details about penalties and a deadline for compliance. (DEM Inter-Office Memorandum 10/24/00 at 4.) A consent agreement is a settlement agreement of formal enforcement actions. Id. at 5. The consent agreement thus settles an appeal of a Notice of Violation, and it negates the need for an adjudicatory hearing, if one was requested. Id. A consent agreement is entered into without a "full trial type hearing" and can be classified as an informal adjudication. See 4 Stein, Mitchell, and Mezines, AdministrativeLaw § 33.01[2] at 33-12 (2007) (explaining the difference between formal and informal adjudications). As an informal adjudication, consent agreements lack the procedure afforded to a formal adjudication.Id.
In this case, the consent agreement specifically provides that it "shall have the full force and effect of a final compliance order of the Director issued after a full hearing on the merits pursuant to . . . § 42-35-1 et. seq. from which no timely appeal was taken." (Consent Agreement 2.) It also explains that "[t]he provisions of this Agreement shall apply to and be binding upon RIDEM, the Respondent and his agents, servants, employees, successors, assigns, and all persons . . . acting under, through and for the Respondent." Id. The consent agreement is signed by the *Page 13 
Appellant and Dean H. Albro, the Chief of the DEM's Office of Compliance and Inspection and is thus binding with respect to DEM and the subject violations.
However, the consent agreement cannot act to bar the Board's subsequent actions. See, e.g., Fuchs v. Moore, 589 N.W.2d 902, 904 (N.D. 1999). This consent agreement did not result from litigation.[3]
Neither the DEM nor Mr. Schultz was afforded the opportunity to present evidence or argument in support of its or his position respectively.See, e.g., Id. (holding that the "[application] of the [administrative res judicata] doctrine is especially appropriate to bar new proceedings when an agency has conducted a trial-type hearing, made findings, and applied the law"). See also Retirement Bd. of the Employees Ret. Sys. ofRI v. DiPrete, 845 A.2d 270, 282 (R.I. 2004) (explaining in a criminal context that where a case ended with the defendant's guilty plea, "no issues actually were decided by a fact finder after trial and, consequently, the [plaintiff] was not collaterally estopped from litigating any issues that may have arisen in the criminal case"). It is clear that, without trial and adjudication of facts and issues, collateral estoppel and res judicata cannot be afforded to agency action, such as the consent agreement in this case.
Therefore, although the language in the consent agreement references finality, it only pertains only to the finality of any proceedings between Mr. Schultz and the DEM. It does not either serve to bind the Board, or to constitute a final litigation of the issues, such that collateral estoppel or res judicata should apply. *Page 14 
 3 Identity of the Issues or Claims
Collateral estoppel requires that the issues presently before the Court are identical to those which were actually litigated in the prior case. The doctrine of collateral estoppel provides that "`an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings.'" Foster — Glocester, 854 A.2d at 1014 (quoting George v.Fadiani, 772 A.2d 1065, 1067 (R.I. 2001)). The DEM proceeding considered seven of Appellant's ISDS license applications and alleged violations of the ISDS regulations. (Consent Agreement 3.) The Board's proceeding considered Appellant's ISDS design, his determinations as to whether wetlands existed on the property, his representations about the existence of wetlands to both DEM and the Scituate Planning Commission, and his coordination of the National Survey. The Board specifically examined whether these actions violated the Rules of Professional Conduct for Engineers and whether they constituted "incompetence" in engineering and gross negligence. Although both DEM and the Board considered alleged violations arising from the same set of circumstances, each agency is charged with applying different laws. Further, the Board is authorized to investigate a broader scope of Appellant's behavior, as it did in this case. DEM was confined to considering the ISDS applications and any failures with the ISD systems, while the Board considered Appellant's overall conduct and competence as an engineer. Therefore, although similar, the issues before the Board are not identical to those considered by the DEM, and collateral estoppel does not apply.
Finally, res judicata requires that the Court consider whether the claims and issues presented in the subsequent suit were, or could have been, litigated in the prior proceeding. Plunkett v. State,869 A.2d 1185, 1188 (R.I. 2005). In making this determination, the Court *Page 15 
notes that the Rhode Island Supreme Court has adopted the transactional rule of res judicata, which provides that new causes of actions are precluded if they are based on the same "transaction, or series of connected transactions, out of which the [first] action arose."ElGabri, 681 A.2d at 276 (internal quotations omitted).
The Appellant contends that the Board's proceeding is clearly based on the same series of transactions considered by DEM. As a result, the Appellant asserts that the Board's proceeding was barred by res judicata. The Appellee argues that the claims differ between the proceedings, and that the claims before the Board could not have been litigated at the DEM proceeding.
In this case, the claims before the Board could not have been litigated before the DEM because each agency serves different purposes, and each has specific authority to enforce separate and distinct laws, rules and regulations. The DEM enforces the rules and regulations promulgated by the DEM pursuant to G.L. 1956 § 42-17.1-1 et seq., while the Board enforces its own rules and regulations pursuant to G.L. 1956 § 5-8-1 et seq., including the Rules of Professional Conduct for Engineers.
Specifically, the DEM considered whether Appellant's actions violated G.L. 1956 § 5-56.1-8, by demonstrating "gross or repeated negligence, incompetence, or misconduct in the representation of site conditions in an application to the DEM or design of an ISDS." However, the Board considered whether Appellant's actions rose to the level of "[f]raud, deceit, recklessness, gross negligence, misconduct, or incompetence in the practice of engineering," in violation of § 5-8-18(b)(4) or whether it violated the Rules of Professional Conduct for Engineers, in violation of § 5-8-18(b)(3). Because the DEM and the Board serve distinctly separate purposes and are authorized by different sections of Rhode Island law to consider different types of claims, the Board's action is not precluded by the DEM's action. Even though *Page 16 
the Board's action is premised on the same transactions that DEM considered, the claims before the Board could not have been litigated at the DEM proceeding, and res judicata does not apply.
Therefore, neither collateral estoppel nor res judicata precludes the Board's proceedings. Although the consent agreement finally concluded the issues between the DEM and Appellant, the Appellant's collateral estoppel argument fails because the Appellant has not established that the parties and issues considered by the DEM are identical to those before the Board. Appellant's res judicata argument also fails because in addition to lacking identity of the parties, this proceeding also lacks identity of claims with the DEM proceeding.
 B The Remaining Conclusions of Law
The Board's remaining conclusions of law, numbers three and four, state respectively that Appellant violated § 5-8-18(b)(3)[4], Rules 1.3, 1.4, 2.6, 2.7, and 3.4 of the Rules of Professional Conduct for Engineers and § 5-8-18(b)(4).[5] Appellant contends that these conclusions are not supported by competent evidence on the record as a whole and that the Board misapplied the law, requiring reversal of the Decision and Order.
The Board must "either make prerequisite findings of fact or 
give a valid ground for its conclusion." Carter Corp. v. Zoning Bd. ofRev., 103 R.I. 515, 517, 238 A.2d 745, 746 (1968). If the Board fails to provide an adequate basis for its conclusions of law, this Court would be left to speculate about how the Board resolved conflicting factual issues. Id. In such instances, it becomes impossible for the Court "either to approve or disapprove what has been done." Id. at 517-518. Moreover, this Court only reviews the Board's decision to determine *Page 17 
whether it is supported by "legally competent evidence." Barrington Sch.Comm. v. Rhode Island State Labor Relations Bd., 608 A.2d 1126, 1138
(R.I. 1992). Legally competent evidence is "more than a scintilla but less than a preponderance" and is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."Center for Behavioral Health, Rhode Island, Inc., v. Barros,710 A.2d 680, 684 (R.I. 1998).
 1 Conclusion of Law 3
The Board's Conclusion of Law 3 finds that Appellant violated §5-8-18(b)(3), which states that the Board may take action if it finds that a person is "[p]racticing engineering in this state in violation of the standards of professional conduct established by the board." Conclusion 3 also finds that Appellant violated the Rules of Professional Conduct for Engineers, Rules 1.3, 1.4, 2.6, 2.7, and 3.4. To support each of these determinations, the Board listed conclusions 3(a) — (d), which specify the underlying basis for Conclusion 3.
A violation of § 5-8-18(b)(3) is complete when the Board determines that a person has violated at least one rule of professional conduct. In this case, the Board found that five rules were violated. This Court considers these rules in conjunction with the enumerated subsection of Conclusion 3 applicable, and the record as a whole, to determine whether the Board's decision should be upheld.
Rule 1.3 of the Rules of Professional Conduct for professional engineers provides that "[a]ll registrants [with the Board of Registration for Professional Engineers] shall perform their services only in the areas of their competence according to current standards of technical competence." Conclusion 3(a) provides the basis for the Board's conclusion that Mr. Schultz violated Rule 1.3. Conclusion of Law 3(a) states: *Page 18 
 [t]he Board rules that Schultz's [sic] performed services beyond his expertise in determining that wetlands did not exist on the Patries' property and performing inaccurate scaling; placing an ISDS system outside property lines; providing incorrect survey; and placing benchmarks in the wrong place. (Decision and Order 4.)
The first area in which Appellant acted beyond his expertise is in determining that there were no wetlands on the Patries' property. The Board found that "Schultz was unaware of whether or not there were wetlands on the property in question." (Decision and Order 2.) The Board also determined that Appellant did not conduct any tests to make a determination about wetlands, yet he had the Patries fill out an ISDS application that represented to the DEM that there were no wetlands on the property. Id. Appellant also represented to the Scituate Planning Commission that there were no wetlands on the property. Id. However, he failed to inform the DEM or the Scituate Planning Commission that his determination was based on Mr. Wall's layperson representations to that effect and that he had not conducted any tests. Despite not knowing whether wetlands existed on the property, Mr. Schultz represented to the Patries, the DEM, and the Scituate Planning Commission that there were none. Finally, Mr. Patrie testified that on numerous occasions Mr. Schultz assured him that there were no wetlands on the property. (Tr. 11/9/04 at 28.) All of these facts constitute legally sufficient evidence on the record supporting the Board's conclusion that Mr. Schultz acted beyond his expertise in making a wetlands determination.
Next, the Board determined that Mr. Schultz performed inaccurate scaling with regard to the Patries' property and the six other properties in issue. Mr. Schultz admitted that he inaccurately scaled the property, blaming the problem on a defect with his software. The Board found that, regardless of the cause, the scaling problem was due to Mr. Schultz's acting beyond his expertise. Appellant asserts that the Board should not penalize him for inaccurate software, *Page 19 
and that his testimony explaining the software defect should be given more weight. This Court does not consider issues of weight and credibility and will not consider whether the Board should have believed Mr. Schultz and not penalized him as a result. See Baker v. Dep't ofEmployment and Training Bd. of Rev., 637 A.2d 360 (R.I. 1994) (explaining that issues of weight and credibility are not assessed on appeal). Moreover, it is within the Board's discretion to determine whether an inaccuracy with software that is not caught by the engineer violates the Rules. There is no dispute that the scaling was incorrect; therefore, this finding is supported by legally sufficient evidence on the record.
Additionally, the Board determined that the ISD system designed by Mr. Schultz may have been beyond the property's lines. In so concluding, the Board relied on Mr. Patrie's representation that he learned the ISD system was beyond the property lines after the original ISDS permit was revoked. (Tr. 11/9/04 at 31.) The Board found that the second system, designed to replace Mr. Schultz's ISDS, was "located more than five hundred feet" from where Mr. Schultz placed his system. (Decision and Order 3; see also Tr. 11/9/04 at 33.) For these reasons, there is legally competent evidence on the record supporting the Board's conclusion that Mr. Schultz acted beyond his expertise by designing an ISD system beyond the property's boundaries.
Next, the Board concluded that Mr. Schultz provided an incorrect survey. Mr. Patrie testified that, upon learning the ISDS permit was suspended, he learned that the survey performed by National was incorrect, and needed to be redone. (Tr. 11/9/04 at 31.) He also testified that he hired a new company to perform the second survey that the property lines on the second survey were substantially different than the property lines on the first survey. (Tr. 11/30/04 at 16.) Moreover, the Board concluded that Mr. Schultz coordinated with National to *Page 20 
engage its services for the Patries. Mr. Patrie explained that Mr. Schultz recommended National, quoted a price, and put the Patries in touch with National. (Tr. 11/30/04 at 13, 14, 15.) All of this evidence supports the conclusion that Mr. Schultz provided the incorrect survey by coordinating it with National. Therefore, there is legally sufficient evidence on the record that Mr. Schultz performed services beyond his expertise by providing the National survey.
Lastly, the Board concluded that Mr. Schultz performed services beyond his expertise by placing the benchmarks in the wrong places on the Patrie property. Appellant contends that the Board's Decision and Order did not speak to the misplacement of benchmarks at all in the findings of fact section and as a result, this conclusion is not supported by evidence on the record.
At the November 9, 2004 hearing, Mr. Patrie testified that Mr. Schultz placed on the property benchmarks that were later moved after the second survey. (Tr. 11/9/04 at 32; see also Tr. 11/30/04 at 20, 22.) The Board determined that this testimony was more credible and should be afforded more weight than Mr. Schultz's explanation. Although Appellant asserts that his testimony is more reliable, this Court does not review the Board's assessment of weight and credibility. See Baker, 637 A.2d 360
(R.I. 1994). Therefore, there is legally competent evidence of record that Appellant acted beyond his expertise by misplacing benchmarks on the property.
Each reason the Board provides to illustrate that Appellant acted beyond his expertise is supported by legally competent evidence on the record. Likewise, the Board's ultimate finding that Mr. Schultz violated Rule 1.3 by performing services beyond his expertise is supported by the record and is upheld.
The Board next found that Schultz violated Rules 1.4 and 2.6 of the Rules of Professional Conduct. Rule 1.4 states that "[r]egistrants shall recognize their responsibility to the public and *Page 21 
shall represent themselves before the public only in an objective and truthful manner." Rule 2.6 provides similar guidelines: "[r]egistrants shall be objective and truthful in professional reports, statements, or testimony. They shall include all relevant and pertinent information in such reports, statements, or testimony." To support its determination that Mr. Schultz violated these rules, the Board provides Conclusion of Law 3(b), which states that "[t]he Board rules that Schultz's [sic] did not represent before the public in an objective and truthful manner." (Decision and Order 4.)
In addition to Conclusion 3(b), the Board noted in factual finding numbers 10 and 11 that Schultz appeared before the Scituate Planning Commission, to whom he represented that he did not believe there were wetlands on the Patrie property. Because it is undisputed that there were wetlands on the Patrie property, it is clear that Mr. Schultz' representation that there were not constitutes inaccurate information. It is irrelevant that Mr. Schultz did not perform a wetlands test, or make any other attempts to determine whether there were wetlands on the property, because he did not express to the Scituate Planning Commission the basis of his opinion. Mr. Schultz did not qualify his opinion by explaining that he had no personal knowledge of whether there were wetlands, nor did he explain that he based his assumption that there were no wetlands on the property on the representations of Mr. Wall. The Board's conclusion that Mr. Schultz did not represent himself in an objective and truthful manner before the public generally or in his testimony to the Scituate Planning Commission is supported by legally competent evidence. Therefore, the Board's determination that Appellant violated Rules 1.4 and 2.6 is supported by probative evidence.
The Board next concluded that Mr. Schultz violated Rule 2.7, which provides that "[r]egistrants shall express a professional opinion publicly only when it is founded upon an *Page 22 
adequate knowledge of the facts and a competent evaluation of the subject matter." Conclusion of Law 3(c) supports this determination, reading "[t]he Board [r]ules that Schultz did not express a professional opinion founded on adequate knowledge of the facts and a competent evaluation of the subject matter when Schultz made representations before [the] Scituate Planning Commission."
The Board found that Mr. Schultz represented to the Scituate Planning Commission that there were no wetlands on the Patrie property, without first conducting any testing to make that determination. Mr. Schultz made a similar representation to DEM, by having Mr. Patrie sign an ISDS application representing that there were no wetlands on the property, without first conducting tests or attempting to make a determination. Therefore, the conclusion that Mr. Schultz's opinion was not founded on adequate knowledge of facts and a competent evaluation of the subject matter is supported by legally competent evidence on the record.
Finally, the Board concluded that Appellant violated Rule 3.4. Rule 3.4 states that "[p]rofessional [e]ngineers in their capacity as the prime design professional will oversee and coordinate the work of other design professionals embracing those services or work in connection with any public or private utilities, structures, buildings, machines, equipment, processes, work, or projects wherein the public welfare or the safeguarding of life, health or property is involved or concerned." The Board found that "Schultz did not oversee and coordinate the work of other design professionals in a proper manner." (Decision and Order 4.)
Finding of fact number five explains that the Board determined that Schultz coordinated the National Land Surveyors' services with respect to the Patries' proposed subdivision. (Decision and Order 2.) Mr. Patrie testified that the Appellant agreed to coordinate with National to perform the survey. (Tr. 11/9/04 at 20.) However, as stated above, the record *Page 23 
contains legally competent evidence to support the Board's conclusion that Mr. Schultz provided an incorrect survey to the Patries. Accordingly, the Board's conclusion that Mr. Schultz failed to properly oversee and coordinate the work of other design professionals is not clearly erroneous.
Finally, the Board's determination that Appellant violated §5-8-18(b)(3), which permits the Board to take action if it determines a person violated Rules of Conduct. Therefore, because the Board made adequate factual findings to support its legal conclusions that Mr. Schultz violated the rules as listed above, the Board's conclusion that Appellant violated § 5-8-18(b)(3) is not clearly erroneous.
 2 Conclusion of Law 4
The Board's final conclusion of law found that Mr. Schultz violated G.L. 1956 § 5-8-18(4) because his "actions constitute[d] incompetence in the practice of engineering and gross negligence." (Decision and Order 4.) As explained, Rule 1.3 of the Rules of Professional Conduct provides that all engineers must practice engineering competently within their area of expertise. The same reasons that support the Board's conclusion that Mr. Schultz acted beyond his expertise support its conclusion that he acted incompetently in engineering.
Negligence can be found where a plaintiff establishes "a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation, between the conduct and the resulting injury, and the actual loss or damage." Selwyn v. Ward, 879 A.2d 882, 886 (R.I. 2005). Negligence is measured by a departure from an ordinary standard of care under the circumstances, while gross negligence is measured as a greater such departure. See, e.g., State v. Jude, 554 N.W.2d 750
(Minn.Ct.App. 1996). Moreover, gross negligence implies that "the actor has engaged in conduct so extreme as to imply some sort of bad faith."District of Columbia v. Henderson, 710 A.2d 874 (D.C. 1998) (internal quotations omitted). *Page 24 
As noted above, the Board determined that Mr. Schultz performed services beyond his expertise. The Board also found that Mr. Schultz expressed a professional opinion not founded on adequate knowledge and that he was not objective and truthful in his representations to the public. Further, the Board concluded that Mr. Schultz improperly oversaw the work of other design professionals. The Board's determination that Mr. Schultz acted with gross negligence in the practice of engineering is not clearly erroneous.
 IV Conclusion
After reviewing the record, this Court finds that the Board's proceedings were not in excess of the statutory authority of the agency. Moreover, this Court finds that the Board's findings of fact and conclusions of law are supported by legally competent evidence in the record, and are not arbitrary or capricious, nor have Appellant's substantial rights been prejudiced. Accordingly, this Court upholds the Board's Decision and Order and denies the appeal.
Counsel shall submit the appropriate judgment for entry.
[1] On March 14, 2006, Mr. Schultz asked the Court to grant a stay preventing the Board from implementing the penalties outlined in its October 20, 2005 Decision and Order, until the Court assessed Schultz's appeal. It is unclear whether this stay was granted. If the stay was not granted, this appeal is moot. Therefore, for the purposes of this decision, the Court has assumed that the penalties were stayed pending this Decision.
[2] The stipulation limited the record to the following documents: the Board's amended Complaint against Mr. Schultz; transcripts for the Board's hearings conducted on October 20, 2004, November 9, 2004, November 30, 2004, December 21, 2004, and May 18, 2005; the Board's Decision and Order; the DEM Notice of Violation; the DEM Consent Agreement; the July 27, 2000 ISDS application, the Boyer Survey, the transcript from the Scituate Planning Board's hearing, the Patries' Superior Court Complaint, and the subsequent ISDS application.
[3] Not only did the consent agreement not result from litigation, but because it addresses DEM violations, it also does not pertain to violations of the Board's regulatory provisions.
[4] Section 5-8-18(b)(3) permits the Board to take action if it finds that a person has violated the Rules of Professional Conduct for Engineers.
[5] Subsection (4) states that the board may take actions for "[f]raud, deceit, recklessness, gross negligence, misconduct, or incompetence in the practice of engineering." G.L. 1956 §5-8-18(b)(4).